IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:19-CV-00111

WILLIAM HARRIS *and*
PHYLLIS HARRIS,

       *Plaintiffs,*

    v.

MARY JANE VANDERBURG,
DOUGLAS MATTHEW GURKINS,
REMCO EAST, INC., *and* MARY
GRACE BISHOP,

       *Defendants.*

**COMPLAINT and JURY REQUEST**

## I.    NATURE OF THE COMPLAINT

1.    Plaintiffs William Harris and Phyllis Harris, a couple who self-identify as Black Americans, bring this complaint for monetary, declaratory, injunctive, and other relief against Defendants Mary Jane Vanderburg, Douglas Matthew Gurkins, Remco East, Inc. and Mary Grace Bishop for discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et. seq.*, and for violations of various state statutes and state common law. Plaintiffs William and Phyllis Harris assert state law claims for breach of quiet enjoyment, wrongful eviction, for failure to maintain the common areas of the premises in a safe condition, negligence, trespass to real property, invasion of privacy, assault, and for illegal unfair or deceptive trade practices.

2.    In February 2017, Plaintiffs William Harris and Phyllis Harris leased one side of a duplex located in Greenville, North Carolina. On the other side of the duplex

1

lived Defendant Matthew Douglas Gurkins, nephew of the owner, Defendant Mary Jane Vanderburg.

3.     Not long after the Harrises moved into the duplex in March 2017, the Harrises met Defendant Vanderburg. She inquired into how her nephew, Defendant Gurkins, was acting.  Mrs. Harris responded she and Mr. Harris did not have any problems with him.  Vanderburg went on to insinuate to Mrs. Harris that if Gurkins's behavior toward them changed, to essentially ignore him.

4.     Within a short amount of time, Gurkins's behavior toward the Harrises changed so dramatically that it could not be ignored. From at least the summer of 2017 up until even after the Harrises vacated the duplex in January 2018, Gurkins subjected them to egregious racial harassment, including repeated use of racial slurs and threats of physical violence. Defendant Gurkins often referred to Mrs. Harris and/or Mr. Harris as "nigger," "motherfucking niggers," "ignorant black niggers," "dumbass nigger," and "Alzheimer nigger." Gurkins made some of these comments to the Harrises while their minor grandchildren were with them. On another occasion, Gurkins pursued Mrs. Harris as she tried to enter her side of the duplex, threatening to "beat her Black ass."

5.     Defendant Gurkins's conduct was so outrageous towards the Harrises that it resulted in him being arrested multiple times.  He was prosecuted and ultimately convicted of communicating threats, stalking, and second degree trespass. Mr. Harris also obtained a civil no-contact order against Gurkins, which remained in effect until Mr. Harris dismissed his complaint after vacating the duplex in January 2018.

2

6.      Over a period of at least seven months, the Harrises notified various employees of Defendant Remco East, Inc., including Defendant Mary Grace Bishop ("Bishop"), about Gukins's severe or pervasive conduct. Bishop had multiple conversations with the Harrises about Gurkins' conduct and she, in turn, had discussions with Vanderburg.

7.      Despite the Harrises' repeated pleas for help, Defendants Vanderburg, Remco East, Inc., and Bishop did not investigate nor intervene to assist them. Instead, they recommended that the Harrises call law enforcement and, later, these defendants tried to evict the Harrises.  The failure to investigate the Harrises' complaints about Gurkins's racial harassment of them and their failure to intervene on the Harrises' behalf violated the Harrises' rights under the federal Fair Housing Act by creating a hostile living environment and interfered with their peaceful enjoyment of their home. The federal Fair Housing Act prohibits a landlord from tolerating and/or facilitating racial harassment by a neighboring tenant. The landlord is required under this federal law to take reasonable steps to investigate allegations of racial harassment by a neighboring tenant once notified and to take further steps to prevent the harassment.

8.      Defendants Vanderburg, Remco East, Inc., and Bishop took no steps to investigate the harassment nor did they take steps to protect the Harrises. Instead of trying to evict the Harrises, they could have evicted Gurkins even if he was a tenant-at-will under North Carolina law, or alternatively if he was not, they could have trespassed

him from the duplex. Instead, they put the burden to protect themselves on the Harrises, who could not afford to move at the time to escape Gurkins's harassment of them.

9.     What the Harrises did not know at the time they endured Gurkins's violent racial harassment was that they were not the first Black American or African American tenants of Vanderburg and Remco East, Inc. to be racially harassed by Gurkins.  In bringing this action, the Harrises hope to be the last.

## II.  JURISDICTION AND VENUE

10.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 42 U.S.C. § 3613 in that the claims alleged herein arise under the federal Fair Housing Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because those claims are related to Plaintiffs' federal law claim and arise out of a common nucleus of related facts, forming part of the same case or controversy under Article III of the United States Constitution.

11.     Venue is proper under 28 U.S.C. § 1391 in that the claims alleged in this complaint arose within Pitt County in the Eastern District of North Carolina.

## III. PARTIES

12.     Plaintiffs William Harris, 75, and Phyllis Harris, 63, husband and wife, are residents of Pitt County.  Each of them self-identify as Black American.

13.     At all times relevant herein, the Harrises are "aggrieved person(s)" pursuant to 42. U.S.C. § 3602(i).

4

14.     At all times relevant herein, the Harrises were "tenants" subject to the protections of N.C. Gen. Stat. §§ 42-25.6, 42-25.9, and 42-37.1.

15.     At all times relevant herein, Plaintiff Phyllis Harris was a "protected tenant" within the meaning of N.C. Gen. Stat. § 42-40(4).

16.     Defendant Mary Jane Vanderburg, a 78-year-old White woman, owns several rental dwellings in Pitt County, including the duplex located at 559 Huntingridge Road in Greenville, North Carolina (the "Huntingridge duplex").

17.     Defendant Remco East, Inc. ("Remco") is a property management company hired by Defendant Vanderburg to manage the Huntingridge duplex. Defendant Mary Grace Bishop is the state-licensed broker-in-charge, qualifying broker of Remco, and the person responsible for Remco's compliance with state and federal laws. Vanderburg, Remco, and Bishop, and each of them, were the "landlord" of William and Phyllis Harris within the meaning of N.C. Gen. Stat. § 42-40 during the period the Harrises occupied the Huntingridge duplex.

18.     At all times relevant herein, Defendants Vanderburg, Remco, and Bishop, in the ordinary course of their respective business as a landlord of residential rental property, engaged in acts or practices affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

19.     Defendant Douglas Matthew Gurkins, 33, a White man, is a resident of Pitt County. At all times relevant herein, he occupied unit A of the Huntingridge duplex. Gurkins is Vanderburg's nephew, and he lived with Vanderburg at times while growing

5

up. Upon information and belief, he occupied unit A as a tenant-at-will of Vanderburg and/or Remco.

20. As further described below, each defendant is directly, vicariously, jointly and severally liable for the misconduct of each other defendant, including for the injuries sustained by William and Phyllis Harris.

## IV. FACTUAL ALLEGATIONS

21. In February 2017, William and Phyllis Harris executed a residential rental contract with Defendant Remco, acting as agent for Defendant Vanderburg, to rent unit B of the Huntingridge duplex. The initial lease term was from March 1, 2017, to February 28, 2018. As an elderly couple, the Harrises hoped to occupy unit B for the foreseeable future and viewed the home as where they would spend their retirements.

22. As part of the lease, Remco required the Harrises to sign a "Crime Free Lease Addendum." This addendum, which Remco counter-signed, provided that residents, occupants, and their guests are prohibited from engaging in any "criminal activity . . . on or off the [rental] premise," including "communicating threats, as prohibited in N.C. Gen. Stat. § 14-277.1 [or] assaults as prohibited by N.C. Gen. Stat. § 14-45.1, and that any violation of these provisions was "good cause of the immediate termination of tenancy."

23. Units A and B of the Huntingridge duplex share a common wall and a common front porch where the two entry doors are located. Each unit has its own driveway. In the photograph below, unit A is on the left and unit B is on the right.

6



24.     The Huntingridge duplex is considered a "dwelling" within the meaning of 42 U.S.C. § 3602(b) and "Premises" for purposes of N.C. Gen. Stat. §42-40(2).

25.     Defendant Douglas Gurkins occupied unit A with Krystyna Grzybek Gurkins, 27, a White woman.  Defendant Mary Jane Vanderburg, Gurkins's aunt, lived nearby.  Vanderburg has permitted Gurkins and Grzybek to occupy unit A since at least 2016.

**A. Gurkins's initial harassment of the Harrises.**

26.     The Harrises began moving into unit B of the Huntingridge duplex on March 1, 2017.

27.     Since at least the summer of 2017, Gurkins started harassing the Harrises because of their race.  Gurkins's harassment threatened, insulted, and intimidated the Harrises for the purpose of forcing them from their home. This harassment was explicitly racial: Gurkins repeatedly menaced them in a loud, threatening voice, calling them "niggers," or "dumbass niggers" when he observed Mr. or Mrs. Harris outside their home.  Gurkins also called Mrs. Harris an "Alzheimer nigger" outside the Huntingridge duplex.

28.     Gurkins did not limit his racial threats to the exterior of the Huntingridge duplex.  The common wall between units A and B is thin, and loud sounds traveled between the dwelling units. While at home in unit B, the Harrises heard Gurkins yelling from inside his dwelling: "Hey niggers, can I come over and suck your dick?" Gurkins also yelled from his dwelling that the Harrises were "ignorant black niggers" after a Sheriff Deputy served him with court papers.  Other times, Gurkins screamed through the common wall, calling them "niggers" and other racist insults.

29.     By June 2017, Gurkins's misconduct had become too threatening to ignore any longer.  The Harrises reported Gurkins's harassment to Grace Bishop and other Remco employees, and pled for their help.

30.     Bishop and other Remco employees responded that they would contact the owner, Vanderburg. Upon information and belief, Bishop conveyed the Harrises' complaints about Gurkins to Vanderburg.

31.     Bishop also recommended to the Harrises that they contact law enforcement for assistance. The Harrises understood this recommendation was suggested by Vanderburg herself.

32.     When the Harrises inquired to Bishop about also meeting with Vanderburg to discuss their complaints about Gurkins, Bishop said she would ask Vanderburg.  The Harrises later learned from Bishop that Vanderburg declined to meet with them.

33.     As a result of Gurkins's harassment of them, it got to the point that the Harrises wanted to vacate their home. The Harrises proposed to Bishop a move-out agreement.

34.     Bishop, Remco's employee and agent of Vanderburg, conveyed the Harrises' proposal to Vanderburg in August 2017. Vanderburg rejected this proposal and neither Bishop nor Remco nor Vanderburg took any corrective action to address Gurkins's behavior towards the Harrises.

35.     After complaining to Remco about Gurkins's racist threats, Gurkins's misconduct escalated.  On August 17, 2017, Michael Eubanks, a deputy with the Pitt County Sheriff's Office, responded to a call at the Huntingridge duplex.  Eubanks contacted Phyllis and William Harris.  Mrs. Harris reported Gurkins's misconduct, complaining that Gurkins's made racist threats, called them "niggers," and frequently drove his large pickup truck on the grass immediately in front of the Harrises' unit.  She also reported that the Harrises' property had been vandalized.  Mrs. Harris requested that

9

Eubanks go over and speak with Gurkins and Gryzbek as she was not getting any help from Remco.

36.     Deputy Eubanks then contacted Gurkins and Grzybek. Gurkins dismissed the Harrises' complaints, telling Eubanks: "My aunt owns the property" and that: "Those niggers will be kicked out next month."  During the conversation with Eubanks, Gurkins admitted driving his truck on the grass in front of the Harrises' dwelling, exclaiming that he "could drive circles around the home if he wanted to."  Eubanks told Gurkins "that he was wrong and that if he goes on the neighbors' side of the property again he is subject to be charged with trespassing whether his Aunt owned the property or not."

37.     Eubanks returned to Phyllis Harris and "strongly advised her to speak with a magistrate."  Mrs. Harris responded that she first wanted to wait and see if Eubanks's discussion with her neighbors would change their behavior.

**B.  Gurkins's harassment becomes more threatening and dangerous.**

38.     Deputy Eubanks's warning did not deter Gurkins.   On the morning of September 1, 2017, as Phyllis Harris was unlocking her front door, she encountered Gurkins exiting his unit onto the same front porch Mrs. Harris was on as she unlocked her door.  Upon seeing Mrs. Harris, Gurkins descended the steps to the front porch and threatened to "beat her Black ass."  Mrs. Harris replied that Gurkins should wait until her husband got home before he made such threats.  Gurkins then quickly retraced his steps up the front porch and lunged at Mrs. Harris, who escaped by slamming shut and locking her front door. Gurkins remained outside, threatening to kick in the door and yelling

10

racial slurs and profanity. Terrified, Mrs. Harris raced through the unit to retrieve her husband's gun. She later sat in a chair facing the front door with her husband's gun cradled in her lap.

39.     When William Harris returned home from work later that day, Phyllis Harris described her encounter with Gurkins. Mrs. Harris expressed her fear that Gurkins would hurt them since his actions had become more menacing and his threatens more violent. They discussed the fact that their complaints to Remco and the Sheriff's Office had not deterred Gurkins. As a result, they finally decided to go to the magistrate's office. Mrs. Harris filed an affidavit for criminal charges against Gurkins.

40.     Pursuant to Mrs. Harris's' affidavit, Gurkins was charged in case 17 CR 05673 with communicating threats in violation of N.C. Gen. Stat. § 14-277.1. He was arrested and released on bond under orders "not to contact Phyllis Harris by any means, directly or indirectly."

41.     Fearing for her safety after this incident, Phyllis Harris avoided as best she could staying at unit B without William Harris present. Instead, most times she stayed with friends or waited in the parking lot at William Harris's place of employment until he was off work. After this incident, William Harris slept with his firearm by his bedside table.

42.     Gurkins violated the stay-away order shortly after it was issued. On September 24, 2017, Gurkins entered the Harrises' property. Phyllis Harris called the Sheriff's Office, and Deputy Eubanks again responded. Based on Eubanks's report,

Gurkins was charged with second degree trespass in violation of N.C. Gen. Stat. § 14-159.13.

**C.  Vanderburg and Remco attempt to evict the Harrises in retaliation for their complaints about Gurkins's conduct and the Harrises continue to seek help.**

43.     Between September 15 and 24, 2017, Phyllis Harris redoubled her efforts to get Remco to take corrective action against Gurkins.  She sent multiple e-mail messages to Bishop, pleading for help and describing her fear that Gurkins would harm her family and damage their property.  Mrs. Harris explained that, even when Gurkins was not making direct threats of violence against them, he hollered profanity with such frequency that she felt that she could no longer have her grandchildren visit her home. Mrs. Harris also informed Bishop of the warrant that they had taken out against Gurkins for threatening Mrs. Harris.

44.     In response to Phyllis Harris's plea for help, on September 26, 2017, Bishop, acting on behalf of Remco and Vanderburg, prepared and signed a complaint in summary ejectment or eviction action against William and Phyllis Harris, claiming that they failed "to maintain a peaceful environment so as not to disturb other tenants' peaceful enjoyment of the Premises."   Bishop filed that complaint in civil case 17 CV 004461 on September 29, 2017.  She also authorized Remco to bill the filing fees of $156.00 to the Harrises. A magistrate dismissed the summary ejectment complaint on October 10, 2017.

45.     William and Phyllis Harris continued to want to vacate their home.  They saw that Gurkins had escalated his racist threats following their complaints to Bishop, Remco and the Sheriff's Office and, even with a court order in effect, Gurkins was still making these threats to them. When the Harrises turned to Bishop and Remco for help, they ended up having to defend themselves against an eviction action.  As a result, William and Phyllis Harris's fear grew and neither felt safe in their home.

46.     With limited funds, however, the Harrises were unable to move. They continued to try and negotiate a move-out agreement with Bishop, Remco, and Vanderburg, while at the same time seeking protection from law enforcement and the local courts – both criminal and civil courts.

47.     As noted above, even before Bishop filed her eviction action against the Harrises, they had tried to negotiate a move-out agreement with Bishop, Remco and Vanderburg.  William and Phyllis Harris even pointed Bishop's attention to the "Crime Free" addendum that Remco and the Harrises had signed, asking why that same agreement did not protect them in their home.

48.     After the magistrate dismissed Bishop's summary ejectment or eviction action, Bishop informed the Harrises that neither Remco nor Vanderburg would agree to the move-out agreement the Harrises proposed.  Instead, on or about October 26, 2017, Bishop notified the Harrises in writing that their lease would not be renewed by Vanderburg when it expired on February 28, 2018.  In the meantime, neither Bishop nor Remco nor Vanderburg took any corrective action against Gurkins, even after being

13

notified again in November 2017 of Gurkins's ongoing racial harassment of the Harrises. Instead, they continued to seek from the Harrises their monthly rent.

49. On November 14, 2017, William Harris filed a complaint for civil co-contact order against Gurkins pursuant to N.C. Gen. Stat. § 50C- 1, *et seq.*, in civil case 17 CVD 2821. He received from the court that same day a temporary no-contact order that mandated, among other things, that Gurkins have "no contact" with Mr. Harris "at all" and that Gurkins cease harassing and stalking him. The return hearing for the permanent no-contact order was continued several times with the protections of the temporary no-contact order still in place. The last continuance order set the hearing for the permanent order to take place on February 9, 2018.

50. During this time, Mr. Harris filed a motion to show cause as he alleged Gurkins continued his harassment when, after being served with the complaint for no-contact and temporary order, Gurkins yelled at the Harrises that they were "ignorant black niggers."

51. On December 29, 2017, William and Phyllis Harris gave Bishop and Remco 30 days' notice of their intent to vacate the Huntingridge duplex. Desperate to escape the harassment, the Harrises had resorted to selling off some of their personal property to raise funds to move out of the Huntingridge duplex to another residence.

**D. Gurkins's harassment continues until and after the Harrises vacated.**

52. Even after the Harrises gave their notice to vacate, Gurkins continued his harassment without abatement. On or about January 20, 2018, Gurkins confronted the

14

Harrises in their backyard as they were preparing to move, calling Phyllis Harris a "bitch" and William Harris a "dumbass nigger."

53.    On January 26, 2018, while the Harrises' minor grandchildren were with them in unit B, Gurkins hollered profanities and racial slurs through the common wall, yelling: "We don't fuck niggers. We don't have sex with niggers. We don't kiss niggers, and we damn sure don't bow down to niggers. Do you hear me? That's the way I was raised. Fuck the niggers..."

54.    Knowing his tirade could be heard through the common wall, Gurkins continued yelling: "And I hope you motherfucking niggers next door fucking heard every goddamn bit of that shit. I ain't got no room for you niggers in my life. And there ain't no white motherfucker in this house scared of a nigger…Y'all some coward-ass mother fucking honky niggers.  Go back to the goddamn cotton *[garbled]* you came out of, nigga. Never mind, not nigga, nigger. I rephrase that…."

55.    On January 27, 2018, Gurkins, joined by Grzybek, stepped up his racial threats and slurs.  As the Harrises were packing the vehicles with the last of their belongings, a witness saw Gurkins standing outside next to his pickup truck, blaring music and swinging a metal object.   When the Harrises drove away – each having one grandchild with them in their respective vehicles – Gurkins and Grzybek followed in Gurkins's truck, shouting:  "You need to leave! You need to leave!"  Rattled, the Harrises stopped the vehicles they were each driving and parked on the side of the highway in a paved area.

15

56.     Gurkins and Grzybek waited for them at the stop sign at the end of Huntingridge Road, which faced the area where the Harrises were parked on the highway.

57.     As the Harrises got back onto the highway, Gurkins and Grzybek turned onto the highway and made a left at the light to follow the Harrises. They finally sped past, yelling and raising their middle fingers at the Harrises.

58.     On January 27, 2018, the Harrises vacated unit B and returned the keys to Remco's office on January 29, 2018.  Gurkins continued to occupy unit A at the Huntingridge duplex.

59.     Mr. Harris dismissed without prejudice his civil complaint for no-contact order against Gurkins on February 6, 2018.

60.     On or about March 5, 2018, Mr. and Mrs. Harris filed an administrative fair housing complaint against Vanderburg, Gurkins, Remco, Bishop, and Krystna Gryzbek with the North Carolina Human Relations Commission ("NCHRC") alleging unlawful housing discrimination based on race in violation of state and federal law; this complaint was considered dually filed with the United States Department of Housing and Urban Development.[1]

---

[1] The NCHRC began investigating the Harrises' complaint shortly after it was filed. With its investigation still pending, Mr. and Mrs. Harris requested and received a Right To Sue Letter from the NCHRC in June 2019 in order to pursue any claims under the N.C. Fair Housing Act, N.C. Gen. Stat. § 41A-1 *et seq.* Upon issuance of the Right To Sue Letter, the NCHRC closed its file on the case.

**E. Gurkins convicted of criminal charges as a result of his misconduct toward Phyllis Harris.**

61.     On April 9, 2018, Gurkins was convicted after a bench trial of communicating threats, in violation of N.C. Gen. Stat. § 14-277.1.  This conviction arose out of Gurkins' conduct on September 1, 2017.  *See* criminal case 17 CR 056073.

62.     Also on April 9, 2018, Gurkins was convicted of misdemeanor stalking, in violation of N.C. Gen. Stat. § 14-277.3A(C), and second degree trespass, in violation of N.C. Gen. Stat. § 14-159.13. This conviction arose out of Gurkins's conduct on September 24, 2017.  *See* criminal case 17 CR 056769.

**F. Long before the Harrises' reported Gurkins's misconduct, Vanderburg, Remco and Bishop knew of Gurkins's dangerous, racially-hostile behavior but failed to take any corrective action.**

63.     Defendants Vanderburg, Remco, and Bishop were all well aware of Gurkins's dangerous, racially-hostile behavior before they rented the Huntingridge duplex to the Harrises.

64.   In January 2017, an African American tenant, occupying a dwelling owned by Defendant Vanderburg and managed by Defendant Remco, was threatened by Gurkins, who entered onto the property, called her a "nigger," and indicated that he had some authority over the dwelling since it was owned by his aunt.   The tenant, who was 38 weeks pregnant, was so frightened, that she called the sheriff's office, her boyfriend, and her mother.  When the tenant's boyfriend arrived to the property and objected to

17

Gurkins's behavior, Gurkins spat on the boyfriend and called him a "nigger," too. Not feeling well, the tenant had to be taken to the hospital by her mother that same day. The tenant reported these events to Defendants Bishop and Remco shortly thereafter.

65.     In 2014, an African American tenant, occupying a dwelling owned by Vanderburg with the tenant's minor daughters, advised Vanderburg that she would be late paying her monthly rent. Her monthly rent included use of utilities.

66.     On December 29, 2014, Gurkins entered onto the tenant's property when only the tenant's minor daughters were present, pounded on the door and demanded that the family pay their rent to his aunt. Gurkins threatened to shut off the family's utilities if they didn't pay immediately. Frantic, the tenant's minor daughters called their mother for help and she rushed home from work. When the tenant objected to Gurkins's behavior and demands, Gurkins called the tenant a "lying nigger" and threatened to "shoot every goddamned one of them nigger bitches." Gurkins spat on the tenant and her children. The tenant called the Sheriff's Office for assistance. The tenant also reported these events to Vanderburg.

67.     On December 29, 2014, Gurkins was charged with communicating threats in violation of N.C. Gen. Stat. § 14-277.1 and injury to personal property (the tenant's vehicle) in violation of N.C. Gen. Stat. § 14-160. Vanderburg signed as surety for Gurkins's appearance bond for pretrial release on December 31, 2014.

68.     After Gurkins's arrest, the utilities to the premises were cut off and the tenant and her family vacated shortly thereafter.  Gurkins subsequently pled guilty in March, 2015, to communicating threats in violation of N.C. Gen. Stat. § 14-277.1.

**G.  Defendants' unlawful housing practices**

69.     Based on these facts alleged in this complaint, Defendants, and each of them, injured William and Phyllis Harris by committing, directly or through their agents, discriminatory housing practices including but not limited to:

a.      Conditioning the availability of a dwelling on a person's response to harassment because of race;

b.      Subjecting a person to harassment because of race that attempts to cause the person to vacate a dwelling;

c.      Conditioning the terms, conditions, or privileges relating to the rental of a dwelling, or denying or limiting the services or facilities in connection therewith, on a person's response to harassment because of race;

d.      Subjecting a person to harassment because of race that has the effect of imposing different terms, conditions, or privileges relating to the rental of a dwelling or denying or limiting service or facilities in connection with the rental of a dwelling;

e.      Creating a hostile living environment based on race by engaging in unwelcome conduct that was sufficiently severe or pervasive to alter a person's living environment and, as a result, created an abusive environment;

f.      Expressing to agents, brokers, employees, or renters or any other persons a preference for or limitation on any renter because of race of such persons;

g.      Coercing a person, either orally, in writing, or by other means, to deny or limit the benefits provided that person in connection with the rental of a dwelling of race;

h.      Threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race of such persons;

i.      Retaliating against any person because that person has made a complaint or participated in any manner in a proceeding under the federal Fair Housing Act;

j.      Retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority;

k.      Failing to take prompt action to correct and end a discriminatory housing practice by an agent or third party where the person knew or should have known of the discriminatory conduct and had the power to correct it; and

l.      Engaging in other unlawful trade and deceptive practices or acts.

70.      Each defendant is directly liable for the commission for each of these unlawful practices:

a.      As a result of his or her own conduct;

b.      For failing to take prompt action to correct and end a discriminatory or unlawful housing practice by that defendant's agent, given her knowledge of her agent's unlawful and discriminatory conduct;

20

c.      For failing to take prompt action to correct and end unlawful and discriminatory housing practices by Gurkins; or

d.      For ratifying the unlawful or discriminatory housing practices committed by any other defendant.

71.      Defendants Vanderburg, Remco, and Bishop are also vicariously liable for the misconduct of Gurkins, whom Vanderburg, Remco, and Bishop enabled to commit the unlawful and discriminatory housing practices alleged herein, and who ratified Gurkins's misconduct by their own actions and omissions.

**H.  Injuries**

72.      As a result of defendants' unlawful conduct, plaintiffs William and Phyllis Harris suffered emotional distress, including humiliation, embarrassment, mental anguish, violation of their civil rights, and loss of dignity. Plaintiffs also suffered an invasion to their private right of occupancy, depriving them of the use and enjoyment of their tenancy, invasion of their privacy, defamation, and wrongful constructive eviction. They also suffered out-of-pocket damages because of the unlawful conduct and experienced a temporary loss of housing opportunity. Accordingly, Plaintiffs William and Phyllis Harris are entitled to compensatory damages under the federal Fair Housing Act, 42 U.S.C. § 3613(c)(1), and under the state law claims raised in this complaint. Plaintiffs William and Phyllis Harris are also entitled to treble damages for violations of the state law concerning unlawful unfair or deceptive trade acts or practices.

73.     In committing the unlawful acts alleged in this complaint, defendants acted with reckless disregard of plaintiffs' federally-protected rights. Accordingly, William and Phyllis Harris are entitled to punitive damages, which they seek under the federal Fair Housing Act, 42 U.S.C. § 3613(c)(1), only.

74.     There is an actual controversy between the parties regarding defendants' duties under the federal fair housing law and state law.  Accordingly, Plaintiffs are entitled to declaratory relief under their federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(1), 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

75.     Unless enjoined, defendants will continue to engage in the discriminatory housing practices alleged in this complaint. Plaintiffs suffered irreparable injury from defendants' acts and the pattern or practice of discrimination as did other African American tenants of Defendants Vanderburg, Remco and Bishop. Plaintiffs are suffering and will continue to suffer unless relief is provided by this Court.  Further, it likely that other Black American or African American applicants or tenants of Defendants Vanderburg, Remco and Bishop will suffer the same fate unless relief is provided by this Court to advance the public interest. Plaintiffs William and Phyllis Harris have no adequate remedy at law. Accordingly, William and Phyllis Harris are entitled to injunctive relief under their federal and state law claims including, but not limited to, 42 U.S.C. § 3613(c)(1) and Rule 65 of the Federal Rules of Civil Procedure.

# V. CLAIMS

## A. First Claim: Fair Housing Act
## All Plaintiffs vs. All Defendants

76.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

77.     Each defendant injured William Harris and Phyllis Harris by committing, directly or through their agents, discriminatory housing practices, 42 U.S.C. §§ 3604(a), (b), (c), and 3617, in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*.

## B. Second Claim: Quiet Enjoyment
## All Plaintiffs vs. Defendants Vanderburg, Remco, and Bishop

78.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

79.     Defendants Vanderburg, Remco, and Bishop injured William and Phyllis Harris, directly or through her agents, by breaching their private right of occupancy and infringing on their right of quiet enjoyment in violation state common law and statutes.

## C. Third Claim: Wrongful Eviction
## All Plaintiffs vs. Defendants Vanderburg, Remco, and Bishop

80.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

81.     Related to events that took place on September 24, 2017, Gurkins was criminally convicted of stalking plaintiff Phyllis Harris.

82.     Phyllis Harris was a "protected tenant" pursuant to N.C. Gen. Stat. § 42-40(4) as she was a victim of stalking under Chapter 14 of the North Carolina General Statutes.

83.     If a landlord terminates a tenancy, choses not renew it, or retaliates in the rental for a dwelling based substantially on the tenant's status as a victim of stalking, otherwise known as a "protected tenant," each of these acts is considered discriminatory in violation of N. C. Gen. Stat.§ 42-42.2.

84.     Defendants Vanderburg, Remco, and Bishop committed discriminatory acts against the Harrises when they sought possession of the rental dwelling by filing a complaint for summary ejectment against the Harrises on September 29, 2017 and after that complaint was dismissed by a court, each chose not to renew the Harries' tenancy on October 18, 2017.

85.     By failing to take any corrective action to remedy the racial harassment endured by the Harrises at the hands of Gurkins,  Defendants Vanderburg, Remco, and Bishop wrongfully and constructively evicted the Harrises from their home in violation of N.C. Gen. Stat. §§ 42-25.6 and 42-25.9.

86.     Defendants Vanderburg, Remco, and Bishop injured plaintiffs William and Phyllis Harris by committing these acts of wrongful eviction.

## D. Fourth Claim: Unsafe Premises
### All Plaintiffs vs. Defendants Vanderburg, Remco, and Bishop

87.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

88.     Defendants Vanderburg, Remco and Bishop had a duty to maintain the common areas of the leased premises in a safe condition as required by N.C. Gen. Stat. § 42-42(a)(3).

89.     Defendants Vanderburg, Remco, and Bishop, directly or through agents, breached her/its duty by failing to correct the unsafe condition of all common areas of the leased premises given Gurkins's known behavior in violation of N.C. Gen. Stat.§ 42-42(a)(3).

90.     Plaintiffs William and Phyllis Harris both sustained injuries as a result of this breach by Defendants Vanderburg, Remco, and Bishop.

## E. Fifth Claim: Negligence
### All Plaintiffs vs. Defendants Vanderburg, Remco and Bishop

91.     Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

92.     Defendants Vanderburg, Remco, and Bishop owed a duty of care to plaintiffs William and Phyllis Harris.

93.     Defendants Vanderburg, Remco, and Bishop breached her/its duty of reasonable care to plaintiffs by failing to maintain the common areas of the leased premises in a safe condition.

25

94. The breach of her/its respective duty of reasonable care by Defendants Vanderburg, Remco, and Bishop was the proximate cause of plaintiffs' injuries.

95. Defendants Vanderburg, Remco, and Bishop injured William and Phyllis Harris by want of ordinary care or skill in the management of their property, person, or agents.

96. William and Phyllis Harris both suffered injury as a result of the breach of her/its duty of reasonable care by Defendants Vanderburg, Remco, and Bishop.

### F. Sixth Claim: Trespass to Real Property
### All Plaintiffs vs. All Defendants

97. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

98. Each defendant injured plaintiffs, directly or through Gurkins's misconduct, by trespassing upon William and Phyllis Harris's premises that they were in exclusive possession of at the time. On or about August 17, 2017, Gurkins had been advised by the Pitt County Sheriff's Office not to enter William and Phyllis Harris's property. Despite this warning, on September 24, 2017, Gurkins intentionally or purposefully entered upon their premises without authorization.

### G. Seventh Claim: Invasion of Privacy – Offensive Intrusion
### All Plaintiffs vs. All Defendants

99. Plaintiffs reallege and incorporate by reference each paragraph previously alleged in this complaint.

100.    Each defendant injured William and Phyllis Harris, directly or through

Gurkins's misconduct, by intruding upon their privacy;

101.    Defendants' intrusion of the plaintiffs' privacy was intentional – knowingly

or with reckless indifference to the consequences of the intrusion;

102.    Defendants' conduct would cause a reasonable person, under the same

circumstances, to be highly offended by the intrusion.

### H. Eighth Claim: Assault
### Plaintiff Phyllis Harris vs. All Defendants

103.    Plaintiffs reallege and incorporate by reference each paragraph previously

alleged in the complaint.

104.    On September 1, 2017, Gurkins acted intentionally or by display of force

and violence when he threatened Plaintiff Phyllis Harris with imminent bodily injury.

105.    As a result of Gurkins's actions or display of force and violence on

September 1, 2017, Phyllis Harris had a reasonable apprehension that harmful contact

with her person was imminent.

106.    Each defendant injured plaintiff Phyllis Harris, directly or through

Gurkins's acts or display of force and violence.

### I.  Ninth Claim: Unfair and Deceptive Trade Practices
### All Plaintiffs vs. Defendants Vanderburg, Remco and Bishop

107.    Plaintiffs reallege and incorporate by reference each paragraph previously

alleged in this complaint.

108. The actions of Defendants Vanderburg, Remco and Bishop constitute an inequitable assertion of power and position against Plaintiffs and offend the established public policy of North Carolina which mandates that landlords shall not discriminate against person in the leasing of a dwelling on the basis of race in violation of 42 U.S.C. §§ 3604(b), - 3617 and landlords shall not retaliate against tenants who seek to exercise their rights under the federal Fair Housing Act.

109. The actions of Defendants Vanderburg, Remco, and Bishop constitute an inequitable assertion of power and position against Plaintiffs and offend the established public policy of North Carolina which also mandates that (i) landlords shall not discriminate against person in the leasing of a dwelling on the basis of that person or household member being a "protected tenant," as defined by N.C. Gen. Stat. § 42-42.2 and (ii) that landlord shall not resort to any other means to eject or evict tenants not otherwise specified in N.C. Gen. Stat. §§ 42-25.6 and 42-25.9

110. The filing of the summary ejectment complaint or eviction action against William and Phyllis Harris by Defendants' Vanderburg, Remco, and Bishop on September 29, 2017, substantially in response to the Harrises' protected actions to enforce their rights as residential tenants is an unfair or deceptive trade practices or acts that such actions violate N.C. Gen. Stat. § 42-37.1.

111. The continued demand for rent by Defendants Vanderburg, Remco, and Bishop from Plaintiffs William and Phyllis Harris knowing of the unsafe condition of the

common areas of the leased premises also constituted an unfair or deceptive trade practice or act.

112.    Defendants Vanderburg, Remco and Bishop injured William Harris and Phyllis Harris, directly or through an agent, by committing these unfair, unethical, deceptive, and illegal practices in violation of N.C. Gen. Stat. § 75-1.1 and related protections under state common law and statutes.

113.    Plaintiffs William and Phyllis Harris are entitled to recover treble their actual damages resulting from each unfair or deceptive trade practice or act committed by defendants Vanderburg, Remco and Bishop pursuant to N.C. Gen. Stat. § 75-16.

## VI. **JURY TRIAL REQUESTED**

114.    Plaintiffs request a trial by jury on all issues so triable.

## VII.  **RELIEF**

Wherefore, Plaintiffs William and Phyllis Harris pray for entry of a judgment against each defendant that:

1.      Awards compensatory damages under each claim alleged herein;

2.      Awards punitive damages under the federal Fair Housing Act only;

3.      Declares that each defendant has violated the federal Fair Housing Act and applicable North Carolina laws;

4.      Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring each defendant and its partners and agents to

29

take affirmative steps to counteract and cure their unlawful and discriminatory practices;

5.      Awards reasonable attorneys' fees and costs; and,

6.      Awards any other relief deemed just by the Court.

Dated:  August 9, 2019.

Respectfully submitted,

*/s/Ayanda Dowtin Meachem*
Ayanda Dowtin Meachem
Legal Aid of North Carolina -
Ahoskie Office
Post Office Box 564
Ahoskie, North Carolina 27910
Tel: (252) 332-5124
Fax: (252) 332-3317
ayandam@legalaidnc.org
N.C. State Bar No. 37714

*/s/Kelly Anne Clarke*
Kelly Anne Clarke
Legal Aid of North Carolina –
Fair Housing Project
2101 Angier Avenue, Suite 300
Durham, North Carolina 27703
Tel: (919) 865-3825
Fax: (919) 861-1887
kellyc@legalaidnc.org
N.C. State Bar No. 28188

*Attorneys for Plaintiffs*

## CERTFICATE OF SERVICE

I hereby certify that on August 9, 2019, I electronically filed the foregoing Complaint and Jury Request with the Clerk of Court using the CM/ECF system, and upon return of the executed Summonses, will serve the following by Federal Express, Delivery Receipt Requested:

Mary Jane Vanderburg  
3183 N.C. Highway 43 N  
Greenville, North Carolina 27834

Douglas Matthew Gurkins  
569 Huntingridge Road  
Greenville, North Carolina 27834

Remco East, Inc.  
Registered Agent: Connally P. Branch  
1902 Charles Boulevard, Suite B  
Greenville, North Carolina 27858

Mary Grace Bishop  **AND/OR**  
1894 N HWY 94  
Columbia, North Carolina 27925

Mary Grace Bishop  
338 Fernando Street  
Manteo, North Carolina 27954

*/s/ Kelly Anne Clarke*  
Kelly Anne Clarke  
Legal Aid of North Carolina –  
Fair Housing Project  
2101 Angier Avenue, Suite 300  
Durham, North Carolina 27703  
Tel: (919) 865-3825  
Fax: (919)861-1887  
kellyc@legalaidnc.org  
N.C. State Bar No. 28188

31