IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CV-111-D

| | | |
|---|---|---|
| WILLIAM HARRIS and PHYLLIS HARRIS, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | ORDER |
| MARY JANE VANDERBURG, DOUGLAS MATTHEW GURKINS, REMCO EAST, INC., and MARY GRACE BISHOP, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on Defendant Vanderburg's motion to quash, motion for protective order, and objections to a Rule 45 subpoena issued by Plaintiffs to a nonparty, as amended. [DE ##64, 66]. These matters have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) for disposition by The Honorable James C. Dever III, United States District Judge. [DE #68]. For the reasons stated below, Defendant Vanderburg's motions are denied.

## BACKGROUND

Plaintiffs filed their initial complaint on August 9, 2019, and an amended complaint on October 24, 2019. (Compl. [DE #1]; Am. Compl. [DE #33].) Each defendant has answered the amended complaint. (Vanderburg Ans. [DE #39]; Gurkins Ans. [DE #38]; Remco Ans. [DE #37]; Bishop Ans. [DE #36].) Defendant

Vanderburg did not file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs have sued Defendants under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, and state law. (*See generally* Am. Compl.) Plaintiffs seek punitive damages regarding their FHA claims against each Defendant. (*Id.* ¶ 73.) Below is a brief summary of relevant facts as alleged by Plaintiffs.

### A. Factual Allegations

In February 2017, Plaintiffs rented one-half of a duplex from Defendant Vanderburg, who had contracted with Defendants Remco and Bishop to manage her rental properties. (Am. Compl. ¶¶ 2, 17, 21.) Shortly after moving into the duplex in March 2017, Defendant Vanderburg asked Plaintiffs how her nephew and their duplex neighbor, Gurkins, was acting. (*Id.* ¶ 3.) Plaintiffs allege Gurkins racially harassed them throughout their tenancy, beginning at least as early as summer 2017. (*Id.* ¶¶ 2, 4, 27.) Plaintiffs further allege they complained to Remco employees on multiple occasions about Gurkins' harassment but no corrective action was ever taken. (*Id.* ¶ 6–8, 29, 30, 34.) Instead, Plaintiffs allege, Defendants Vanderburg, Bishop, and Remco retaliated against them by filing a summary ejectment (eviction) action and continued to abstain from taking corrective action against Gurkins' continued harassment. (*Id.* ¶¶ 44–45, 69.)

Plaintiffs also allege that two other African-American tenants of Vanderburg-owned properties were harassed by Gurkins: one in 2017 and one in 2014 (specifically, December 29, 2014). (Am. Compl. ¶¶ 64–68.) They allege that the tenant harassed in

2

2014 reported the harassment to Defendant Vanderburg, in addition to reporting the harassment to local law enforcement. (*Id.* ¶ 66.) Gurkins was charged with misdemeanor offenses under North Carolina law in connection with the 2014 harassment, and Defendant Vanderburg signed as a surety for Gurkins' pretrial release bond. (*Id.* ¶ 67.) Furthermore, Plaintiffs allege, Defendant Vanderburg continued to permit Gurkins to occupy her dwellings despite being aware of his history of racial harassment. (*Id.* ¶ 44.)

On August 6, 2020, Gurkins pleaded guilty to a violation of 42 U.S.C. § 3631 (criminal interference with right to fair housing by threat of force) with an offense date of December 29, 2014. *United States v. Gurkins*, No. 2:20-CR-31-BO, ECF Nos. 1, 8, 28 (E.D.N.C.).[1]

### B. Subpoena

On July 30, 2020, Plaintiffs issued a subpoena to Bobby Harris, CPA, Defendant Vanderburg's tax preparer, seeking Defendant Vanderburg's tax records for 2018 and 2019 and any supporting documents provided to Harris for those tax returns, along with "any net worth statement or financial condition statement for Mary Jane Vanderburg, such as a loan application, dated since 01/01/2018." (Am. Mem. Supp. Mot. Quash & Prot. Order, Ex. 1 [DE #67-1] ("Subpoena").) The subpoena required compliance by August 20, 2020. (*Id.*) Defendant Vanderburg moved to quash and for a protective order on August 13, 2020 (Mot. Quash & Prot. Order [DE #64];

---

[1] Court records, of which this court takes judicial notice, establish that Gurkins was sentenced to twenty-eight months' imprisonment on November 23, 2020. *Gurkins*, No. 2:20-CR-31-BO, ECF No. 28 (E.D.N.C. Nov. 23, 2020).

3

Mem. Supp. Mot. Quash & Prot. Order [DE #65]), and filed an amended motion and supporting memorandum on August 19, 2020 (Am. Mot. Quash & Prot. Order [DE #66]; Am. Mem. Supp. Mot. Quash & Prot. Order [DE #67]). Plaintiffs responded in opposition on September 2, 2020. (Resp. Opp'n Am. Mot. Quash & Prot. Order [DE #72] ("Resp. Opp'n").)

The nonparty recipient of the subpoena has not objected to the subpoena, filed a motion to quash, or otherwise sought protection from the subpoena. It also appears that the nonparty recipient has already produced the subpoenaed documents for year 2018 but Plaintiffs have not viewed the documents. (Resp. Opp'n, Ex. 4 [DE #72-5].)

## DISCUSSION

### I. Discovery Principles

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas to nonparties. Fed. R. Civ. P. 45; *see* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or permit an inspection."). The nonparty may contest the subpoena by serving objections pursuant to Rule 45(d)(2)(B), which suspends its obligation to comply with the subpoena pending a court order, *Total Rx Care, LLC v. Great Northern Ins. Co.*, 318 F.R.D. 587, 593 (N.D. Tex. 2017); by filing a motion to quash or modify pursuant to Rule 45(d)(3); or by moving for a protective order pursuant to Rule 26(c), *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 452–53 (E.D.N.C. 2005). In contrast, a party contesting a subpoena must move to quash or seek a protective order rather than

4

merely object pursuant to Rule 45(d)(2)(B). *United States ex rel. Ortiz v. Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 544 (S.D.N.Y. 2016).

"Rule 45 subpoenas may only be used to compel production of information that is discoverable under Rule 26." *Sourgoutsis v. U.S. Capitol Police*, 323 F.R.D. 100, 105 (D.D.C. 2017) (citing *AF Holdings, LLC v. Does 1–1058*, 752 F.3d 990, 995 (D.C. Cir. 2014)); *see also Jones v. Campbell Univ.*, No. 5:20-CV-29-BO, 2020 WL 4451173, at *2 (E.D.N.C. Aug. 3, 2020) ("Rule 45 adopts the standard codified in Rule 26 in determining what is discoverable.") (citing *Schaaf*, 233 F.R.D. at 453). "However, simply because 'requested information is discoverable under Rule 26[b] does not mean that discovery must be had.'" *Jones*, 2020 WL 4451173, at *2 (quoting *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)).

"Generally, a party lacks standing to challenge a subpoena issued to a nonparty." *Jones*, 2020 WL 4451173, at *2 (citing *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 287 F.R.D. 377, 382 (S.D.W. Va. 2012)). However, a party may challenge a subpoena to a nonparty if the party "claims some personal right or privilege in the information sought by the subpoena." *United States v. Gordon*, 247 F.R.D. 509, 509–10 (E.D.N.C. 2007) (quoting *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) (per curiam) (unpublished)). Relatedly, "where the challenging party has moved for a protective order, the court is permitted to consider its position on the merits." *Jones*, 2020 WL 4451173, at *2 (citing *Artis v. Murphy-Brown LLC*, No. 7:14-CV-237-BR, 2018 WL 3352639, at *2 (E.D.N.C. July 9, 2018)).

5

Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Relevance "has been broadly construed to encompass 'any possibility' that the information sought may be relevant to the claim or defense of any party," and the burden rests on the party resisting discovery to demonstrate that discovery should not be had. *EEOC v. Sheffield Fin., LLC*, No. 1:06-CV-00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007).

Rule 26 requires the court to limit the frequency or extent of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or the discovery sought is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). The rule also authorizes the court to impose appropriate limitations on discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such protective orders may include, *inter alia*, provisions "forbidding the disclosure or discovery," "prescribing a discovery method other than the one selected by the party seeking discovery," or "forbidding inquiry into certain matters, or limiting the

6

scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (c)(1)(C), (c)(1)(D).

Defendant Vanderburg has standing to challenge the subpoena as it seeks production of her tax records from her accountant and she has moved for a protective order. *See Jones*, 2020 WL 4451173, at *2 (court is permitted to consider party's position on the merits regarding a subpoena issued to a nonparty if the party has moved for a protective order). Furthermore, Defendant Vanderburg's amended motions were filed before the compliance date set in the subpoena and, therefore, have been timely filed pursuant to Rule 45(d)(3)(A). *See Sines v. Kessler*, 325 F.R.D. 563, 567 (E.D. La. 2018) (motion to quash is timely filed within the meaning of Rule 45(d)(3)(A) if filed before the compliance date in the subpoena); *Carter v. Archdale Police Dep't*, No. 1:13-CV-613, 2014 WL 1774471, at *3 (M.D.N.C. May 2, 2014) (same).

## II. Arguments & Analysis

### A. Defendant Vanderburg's Arguments

In support of her motion to quash and motion for a protective order, Defendant Vanderburg makes two arguments. First, Defendant Vanderburg contends there is a "qualified privilege" against the disclosure of tax returns (Am. Mem. Supp. Mot. Quash & Prot. Order at 5 (citing *Water Out Drying Corp. v. Allen*, No. 3:05-CV-353, 2006 WL 1642215, at *1 (W.D.N.C. June 7, 2006) (citing *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216–17 (W.D.Va. 1997))) such that "a third party may not produce requested financial documents, including tax returns and information absent

7

a court order" (Am. Mem. Supp. Mot. Quash & Prot. Order at 5).[2] Plaintiffs' attempt to obtain this information via subpoena "is not permitted," Defendant Vanderburg argues, because Plaintiffs have not moved the court for an order allowing disclosure of the tax returns and related documents. (Am. Mem. Supp. Mot. Quash & Prot. Order at 6.) Thus, according to Defendant Vanderburg, the subpoena should be quashed and a protective order entered preventing production of her financial documents. (*Id.*)

Second, Defendant Vanderburg argues the only possible basis for the information sought through the subpoena is in relation to Plaintiffs' claim for punitive damages and such financial information may not be disclosed prior to a prima facie showing of the punitive damages claim. (Am. Mem. Supp. Mot. Quash & Prot. Order at 6–7 (citing *Water Out Drying*, 2006 WL 164215, at *1; *Taylor v. McGill Envtl. Sys. of N.C., Int'l*, No. 7:13-CV-270-D, 2015 WL 1125108, at *7–8 (E.D.N.C. Mar. 12, 2015)). Defendant Vanderburg further contends that Plaintiffs have not established a prima facie case for their claim for punitive damages and that the motion to quash should therefore be granted. (Am. Mem. Supp. Mot. Quash & Prot. Order at 7.)

---

[2] Defendant Vanderburg contends that *Rice* "held that 'a third party may not produce requested financial documents, including tax returns and information absent a court order.'" (Am. Mem. Supp. Mot. Quash & Prot. Order at 5 (quoting *Rice v. Rutledge Rd. Assocs., LLC,* No. 1:15-CV-269, 2016 WL 3436413, at *5, 2016 U.S. Dist. LEXIS 78560, at *[1]3 (W.D.N.C. June 16, 2016)).) Contrary to Defendant Vanderburg's argument, the *Rice* court did not so hold. Rather, the language referenced by Defendant Vanderburg appears to be a statement by the plaintiff regarding a claim of confidentiality lodged by a nonparty in response to the plaintiff's subpoena.

8

### B. Plaintiffs' Arguments

Plaintiffs raise several arguments in response. First, they note there is no absolute right or privilege against the disclosure of a party's tax returns and that courts have allowed disclosure of such records in FHA cases. (Resp. Opp'n at 2–3.) Second, they argue the financial information sought through the subpoena is relevant to their FHA punitive damages claim against Defendant Vanderburg (*id.* at 3) and information likely contained in IRS Form 1040, Schedule E, concerning rental dwelling service providers is relevant to their FHA retaliation claim (*id.* at 6). Third, they argue that they are "not required to established FHA liability or make out a *prima facie* showing of entitlement to punitive damages to justify discovery of financial information." (*Id.* at 3–5.) Alternatively, they argue they have "sufficiently pled detailed allegations supporting punitive damages under the FHA" which, in conjunction with Gurkins' federal criminal conviction under the FHA, make out a "credible showing" that they are entitled to punitive damages. (*Id.* at 5 (citing *Moore v. DAN Holdings, Inc.*, No. 1:12-CV-503, 2013 WL 1833557, at *14 (M.D.N.C. Apr. 30, 2013))). Lastly, Plaintiffs argue the subpoena is appropriate and imposes no undue burden to Defendant Vanderburg because the subpoena seeks relevant information, Defendant Vanderburg has refused to provide the information herself, and the subpoena is narrowly tailored as it seeks tax records for only 2018 and 2019 and any net worth statement from January 1, 2018. (*Id.* at 6–8.)

9

C. Analysis

The court rejects Defendant Vanderburg's first argument – that the qualified privilege identified in *Water Out Drying* operates to nullify any request for tax records absent consent or court order. Subpoenas duces tecum issued by an attorney pursuant to Rule 45 carry the force of the court. *Higginbotham v. KCS Intern., Inc.*, 202 F.R.D. 444, 455 (D. Md. 2001) ("Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court." (citing Fed. R. Civ. P. 45(a) advisory committee's note to 1991 amendment)); *see also* 9A Wright & Miller, Fed. Prac. & Procedure § 2453 (3d ed. Oct. 2020 update) (discussing history of Rule 45 and noting that an attorney-issued subpoena "has the force of the court behind it").

Defendant Vanderburg's second argument concerns the substance of whether the information sought by the subpoena should be disclosed at this time. Given the detailed factual allegations in Plaintiffs' amended complaint and the evidence corroborating these allegations, the information sought by the subpoena appears relevant and proportional to the needs of the case.

Information regarding Defendant Vanderburg's financial position is relevant to Plaintiffs' claim for punitive damages under the FHA. *See Matarese*, 795 F. Supp. 2d 402, 450–51 (E.D. Va. 2011) (citing Supreme Court and Eighth Circuit cases), *aff'd in part, vacated in part on other grounds sub nom. Matarese v. Archstone Cmtys., LLC*, 468 F. App'x 283 (4th Cir. 2012) (per curiam) (unpublished); Robert G. Schwemm, *Housing Discrimination Law and Litigation* § 25:12 & n.2 (July 2020

updated) (collecting cases); see also *Stamathis v. Flying J., Inc.*, 389 F.3d 429, 442 (4th Cir. 2004) (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 22 (1991), for the proposition that "a defendant's financial position is a proper consideration in assessing punitive damages").

The subpoena is narrowly tailored to seek relevant information regarding Vanderburg's financial situation and expenses regarding rental dwelling service providers for tax years 2018 and 2019. Furthermore, the burden of producing this information would appear to be minimal.

The gravamen of Defendant Vanderburg's motions is that her tax records should not be disclosed because there has been no prima facie showing she is liable for punitive damages under the FHA. Defendant Vanderburg's reliance on *Water Out Drying*, 2006 WL 1642215, and *Taylor*, 2015 WL 1125108, is misplaced, however. As a preliminary matter, both cases contain very brief, case-specific analyses of this issue. *See Water Out Drying*, 2006 WL 1642215, at *1; *Taylor*, 2015 WL 11251089, at *8. Furthermore, *Water Out Drying* concerned claims for trademark infringement and for unfair and deceptive trade practices under North Carolina law. The enhanced damages sought in that case did not depend on the defendant's financial situation. *Water Out Drying*, 2006 WL 1642215, at *1 ("Plaintiff has failed to meet its burden to show relevance, as it has not even asserted a punitive damages claim in its Complaint. Any enhanced damages in trademark cases and in cases involving unfair and deceptive trade practices are three times the damages award. Thus, the award of damages . . . has nothing to do with Defendants' net worth or their ability to pay."

11

(citations omitted)). In *Taylor*, the court simply determined that the issue would be more appropriately addressed following its ruling on "the parties' fully developed motions for summary judgment on the issue of punitive damages." *Taylor*, 2015 WL 1125108, at *8 (citing *Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105 (E.D.N.C. 1993), and *Nix v. Holbrook*, No. 5:13-CV-2173, 2015 WL 791213, at *3 (D.S.C. Feb. 25, 2015)).

*Robinson v. Quicken Loans Inc.*, No. 3:12-CV-0981, 2013 WL 1704839 (S.D.W. Va. Apr. 19, 2013), acknowledged divergence among district courts as to "what—if any—showing must be made before a plaintiff is entitled to pretrial discovery of financial statements relevant to a punitive damages claim." *Robinson*, 2013 WL 1704839, at *3. *Robinson* concluded that a prima facie claim for punitive damages must be shown to obtain discovery of the defendant's financial records but noted disagreement among the parties "as to what satisfies a prima facie claim in this context." *Id.* at *4. In answering that question, *Robinson* held that a plaintiff must produce some factual evidence in support of the punitive damages claim and that merely surviving a motion to dismiss is not sufficient. *Id.* & n.2 (noting that the court in *Hester v. Cottrell Contracting Corp.*, No. 7:00-CV-70-BR, 2001 WL 1764200 (E.D.N.C. Apr. 27, 2001), ordered pretrial disclosure of financial records after the plaintiff survived a motion to dismiss and came forward with evidence to demonstrate punitive damages may be warranted). *Robinson* explained that this evidentiary showing did not necessarily require surviving summary judgment but could be met through a motion accompanied by affidavits or documentary evidence that would

12

"demonstrate a viable claim for punitive damages." *Id.* n.3. *Cf. SMD Software, Inc. v. EMove, Inc.*, No. 5:08-CV-403-FL, 2010 WL 2232261, at *2 (E.D.N.C. June 2, 2010) (prima facie showing as to punitive damages is required to obtain tax records and "can be satisfied by presenting evidence in support of the punitive damages claim or by surviving a motion to dismiss or a motion for summary judgment").

*Moore v. DAN Holdings, Inc.*, a case relied on by Plaintiffs, reached a similar conclusion, holding that "the mere inclusion of a bald demand for punitive damages in a pleading does not entitle a litigant to discovery of sensitive financial information." *Moore*, 2013 WL 1833557, at *14. The court in *Moore* refused to compel production of the defendant's tax returns, explaining that the claim for punitive damages relied on boilerplate language and lacked "factual allegations that clearly would warrant [punitive damages]" and that the plaintiff had not "proffer[ed] any factual showing" to justify punitive damages. *Id.* at *15.

Here, Defendant Vanderburg does not explain how Plaintiffs have failed to make a prima facie showing as to punitive damages under the FHA. (Am. Mem. Supp. Mot. Quash & Prot. Order at 7 (stating simply that "Plaintiffs have not established a *prima facie* case for their claim for punitive damages")). For their part, Plaintiffs never articulate what a prima facie or "credible" showing is but argue that the allegations in their amended complaint, "coupled with Gurkins pleading guilty to criminal interference of a fair housing right under the FHA," meets the standard. (Resp. Opp'n at 5.) Plaintiffs have also attached several exhibits to their response in opposition, including interrogatory responses by Defendant Vanderburg, to

13

corroborate factual allegations in their amended complaint. (Resp. Opp'n, Ex. 5 [DE #72-6].)

Several factors count in Plaintiffs' favor. First, Plaintiffs have not made a "bald" or boilerplate claim for punitive damages in their pleading. *See Moore*, 2013 WL 1833557, at *14. Rather, Plaintiffs have alleged specific facts to support their FHA punitive damages claim: roughly, that Defendant Vanderburg permitted her nephew Gurkins, to occupy her rental dwellings despite being on notice that Gurkins had a history of racially harassing African-American tenants of Vanderburg's rental properties dating back to at least 2014 (Am. Compl. ¶¶ 44, 63–68); that Vanderburg had asked Plaintiffs about any problems with her nephew early on in Plaintiffs' tenancy (*id.* ¶ 3); that Vanderburg knew Plaintiffs had complained about Gurkins' conduct towards them (*id.* ¶¶ 29–30; Bishop Ans. ¶¶ 29–30); that Vanderburg instructed Defendants Remco and Bishop to initiate an eviction action as retaliation against Plaintiffs for complaining about Gurkins' racial harassment (Am. Compl. ¶ 44); and that Vanderburg permitted Gurkins to remain in her rental property where he continued his racial harassment of Plaintiffs until Plaintiffs vacated the duplex in January 2018 (*id.* ¶ 58).

Second, Plaintiffs have submitted evidence to corroborate the factual allegations in their amended complaint. In her responses to Plaintiffs' interrogatories, Defendant Vanderburg acknowledged that she permitted Gurkins to reside rent-free at three of her properties, including 559-A Huntingridge Road, Greenville, North Carolina (Plaintiffs occupied unit B of this duplex), and 569

Huntingridge Road, Greenville, North Carolina. (Resp. Opp'n, Ex. 5 at 3–4.) Defendant Vanderburg stated that Gurkins moved into the property at 569 Huntingridge Road after the events giving rise to Plaintiffs' claims and that Gurkins resides at this property currently. (*Id.*)[3] Vanderburg also acknowledged that she has "at times" hired attorneys to represent Gurkins and paid bail and attorney's fees on behalf of Gurkins. (*Id.* at 4–5.) Plaintiffs have also submitted discovery responses from Defendant Bishop corroborating Plaintiffs' allegation that Defendants Bishop and Remco initiated the eviction action against Plaintiffs at the direction of Defendant Vanderburg based on concerns raised by Vanderburg and Gurkins about Plaintiffs. (Resp. Opp'n, Ex. 12 [DE #72-13] at 6–7.) This evidence is of the type referenced in *Hester*, 2001 WL 1764200, at *4, and contemplated by *Robinson*, 2013 WL 1704839, at *4, and *SMD Software*, 2010 WL 2232261, at *2. Relatedly, Gurkins' criminal conviction for violation of 42 U.S.C. § 3631, with an offense date that corresponds to one of the prior incidents of racial harassment identified in Plaintiffs' amended complaint, also provides factual support.

To quash Plaintiffs' subpoena in light of the specific allegations as to FHA punitive damages pleaded in the amended complaint and factual evidence proffered in Plaintiffs' response to the motions would be tantamount to holding that financial information relevant to a defendant's punitive damages liability under the FHA is only discoverable after the punitive damages claim has survived a motion for

---

[3] Gurkins was taken into federal custody on August 6, 2020, after pleading guilty to criminal interference with right to fair housing by threat of violence, in violation of 42 U.S.C. § 3631. *Gurkins*, No. 2:20-CR-31-BO, ECF Nos. 8, 12 (E.D.N.C.).

15

Case 4:19-cv-00111-D   Document 90   Filed 01/11/21   Page 15 of 17

summary judgment. That would be a bright-line rule unsupported by the law. *See Robinson*, 2013 WL 1704839, at *4. Whatever is meant by "prima facie showing,"[4] "credible showing,"[5] or "viable punitive damages claim,"[6] it cannot simply mean "withstands a motion for summary judgment." *Id.* The court therefore agrees with *Robinson*, *SMD Software*, and *Hester* that a party's financial information, including tax records, may be discoverable prior to a summary judgment ruling if the pleadings contain more than a bald demand for punitive damages and there has been some factual showing to support the punitive damages claim. Here, Plaintiffs have met that standard.

The information sought by Plaintiffs' subpoena is relevant to the FHA punitive damages claim and proportional to the needs of the case, the FHA punitive damages claim has been pleaded with more than bald or boilerplate language, and there has been evidence proffered in support of that claim. Accordingly, the court denies Defendant Vanderburg's motion to quash and motion for a protective order.

---

[4] *Taylor*, 2015 WL 1125108, at *7; *Robinson*, 2013 WL 1704839, at *4; *SMD Software*, 2010 WL 2232261, at *2; *Water Out Drying*, 2006 WL 1642215, at *1.

[5] *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, No. 1:02-CV-146, 2004 WL 444570, at *1 (M.D.N.C. Feb. 24, 2004) (discussing earlier denial of motion to compel tax returns where there had not been a "credible showing" regarding entitlement to punitive damages).

[6] *Robinson*, 2013 WL 1704839, at *4 n.3; *Blount*, 162 F.R.D. at 105.

## CONCLUSION

For the foregoing reasons, Defendant Vanderburg's motion to quash and motion for a protective order, as amended [DE ##64, 66], are DENIED.

This 11th day of January 2021.

KIMBERLY A. SWANK
United States Magistrate Judge