# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION
#### No. 4:19-CV-00111

| | | |
|---|---|---|
| WILLIAM HARRIS and PHYLLIS HARRIS, | ) ) ) | **PLAINTIFFS' RESPONSE TO DEFENDANT MARY JANE VANDERBURG'S LR RULE 56.1 STATEMENT OF MATERIAL FACTS [Doc. 96]** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| MARY JANE VANDERBURG, DOUGLAS MATTHEW GURKINS, REMCO EAST, INC., and MARY GRACE BISHOP, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Pursuant to LR 56.1(a)(2), plaintiffs William Harris and Phyllis Harris submit the following response to the statement of undisputed material facts submitted by defendant Mary Jane Vanderburg in support of her motion for summary judgment (Docs. 95, 96). The evidence cited herein is contained in Plaintiffs' Appendix to Local Civil Rule 56.1 Statement of Material Facts filed herewith ("Plaintiffs' Appendix").

<u>Defendants' Fact 1</u>: Beginning in approximately 1981, Ms. Vanderburg, along with her husband, built several properties located on Huntingridge Road in Greenville, North Carolina, which they owned. (Vanderburg Aff. ¶ 2).

<u>Response to Defendants' Fact 2</u>: Undisputed.

Defendants' Fact 2:  Since approximately, 1987, Ms. Vanderburg, along with her husband, has owned the duplex property constructed at 559 Huntingridge Road.  (Vanderburg Aff. ¶ 3).

Response to Defendants' Fact 2:  Undisputed.

Defendants' Fact 3:  The property located at 559 Huntingridge Road is separated into two duplex  units, Unit 559A and 559B.  (Vanderburg Aff. ¶ 4).

Response to Defendants' Fact 3:  Undisputed, except that, to clarify, the property located at 559 Huntingridge Road is one building split into two units, Units 559-A and 559-B.

Defendants' Fact 4:  Until 2016, Ms. Vanderburg, along with the assistance of her husband, leased the properties located on Huntingridge Road privately.  (Vanderburg Aff. ¶ 5).

Response to Defendants' Fact 4:  Undisputed.

Defendants' Fact 5:  In 2016, following the death of her husband, Ms. Vanderburg hired Remco East, Inc. (hereinafter "Remco") to manage the rental properties located on Huntingridge Road, including the duplex unit located at 559B Huntingridge Road. Remco did not manage the unit located at 559A Huntingridge Road at that time.  (Vanderburg Aff. ¶ 6; Vanderburg Dep. 19-20, Ex. 80).

Response to Defendants' Fact 5:  Undisputed that the Exclusive

Property Management Agreement (Depo. Exh. 80)[1] does not list unit

559-A as a property managed by Remco pursuant to the terms of that

agreement, but unit 559-B was added to the list on January 24, 2017.

(Depo. Exh. 80, attached as part of Plaintiffs' Appendix, Exh. 27.)

Defendants' Fact 6:  Beginning in 2016, Remco was solely responsible for

procuring tenants, managing and conducting maintenance of the rental properties,

including 559B Huntingridge Road.  (Vanderburg Aff. ¶ 7; Vanderburg Dep. Ex

80; Bradley Dep. 25, 107).

Response to Defendants' Fact 6:  Undisputed that the Exclusive

Property Management Agreement (Depo. Exh. 80) provides that

"Owner agrees that Agent shall be the exclusive rental agent for the

Property, and that no other party, including Owner, shall offer the

Property for rent during the time this Agreement is in effect."  (Depo.

Exh. 80 at p. 6 ¶ 23.)

---

[1]All Deposition Exhibits cited in this Statement are submitted as part of the set of Deposition Exhibits included with  Plaintiffs' Appendix to Local Rule 56.1 Statements of Material Facts filed herewith ("Plaintiffs' Appendix"), Volume 2, may be found therein at Exhibit 27.

Defendants' Fact 7:   Beginning in March 2017, Plaintiffs leased Unit 559B of the duplex properties located at 559 Huntingridge Road (hereinafter "Unit 559B") owned by Ms. Vanderburg and managed by Remco.  (Bishop Dep. Ex. 13).

Response to Defendants' Fact 7:  Undisputed.

Defendants' Fact 8:   It was Plaintiffs' understanding that they rented from Remco East.  (P. Harris Dep. 117).

Response to Fact 8:  Undisputed.

Defendants' Fact 9:   During 2017, Douglas Matthew Gurkins, Ms. Vanderburg's nephew, (hereinafter "Defendant Gurkins") resided on the opposite side of the duplex, 559A Huntingridge Road (hereinafter "Unit 559A"). (Vanderburg Aff. ¶ 8).

Response to Fact 9:  Undisputed that Gurkins resided in unit 559-A.

Defendants' Fact 10:   During 2017, Mary Grace Bishop (hereinafter "Defendant Bishop") was the broker in charge of Remco.  (Bishop Dep. 65-66).

Response to Fact 10:  Undisputed.

<u>Defendants' Fact 11:</u>   Plaintiffs never reported any of Defendant Gurkins'
alleged use of racial slurs to Ms. Vanderburg at any time.  (Vanderburg Aff. ¶
16-20; P. Harris Dep. 112-18; W. Harris Dep. 62-64).

> <u>Response to Fact 11:</u>  Objection, incomplete, Fed. R. Evid. 106.
> Disputed.  While plaintiffs did not report Gurkins' use of racial slurs
> to Vanderburg personally, as set forth in Response to Fact 28 below,
> they reported that information to Grace Bishop, who was
> Vanderburg's agent.  (See Vanderburg Response to Request for
> Admission 7, attached as Exh. 12 of Plaintiffs' Appendix.)  Plaintiffs
> also wrote a letter "To Whom it May Concern" on October 18, 2017,
> sent to Remco, which included the Harrises' statement that "[w]e
> expect the response to criminal behavior by your nephew to be as
> severe as our lease indicates in the Crime Free Lease Addendum.
> (Depo. Exh. 43, attached at Exh. 27 of Plaintiffs' Appendix.)  Bishop
> contacted Vanderburg and alerted her to the receipt of the letter.
> (Deposition of Mary Grace Bishop , Vol. 1, attached as Exh. 2 to
> Plaintiffs' Appendix ["Bishop Depo."] 251:2-11.)  And, plaintiffs'
> attorney Marc Haggart advised Remco of Gurkins' racial slurs in his
> letter dated November 1, 2017, which Bishop read to Vanderburg.

(Depo. Exh. 46; Declaration of Marc Haggard attached as Exh. 23 to Plaintiffs' Appendix ("Haggard Dec.") ¶¶ 1-8; Bishop Depo. 268:16-24; 269:1-16; 272:13-24; 273:1-15 .)

Defendants' Fact 12:  Ms. Vanderburg briefly met Phyllis Harris at the time she moved in to Unit 559B. Ms. Vanderburg did not have any further interaction with Phyllis Harris during her tenancy at 559B.  (Vanderburg Aff. ¶ 13; P. Harris Dep. 111).

Response to Fact 12:  Undisputed.

Defendants' Fact 13:  Ms. Vanderburg never had any interaction with William Harris during his tenancy at Unit 559B.  (Vanderburg Aff. ¶ 14; W. Harris Dep. 62).

Response to Fact 13:  Undisputed.

Defendants' Fact 14:  Neither Phyllis nor William Harris ever attempted to directly contact Ms. Vanderburg at any time during their tenancy.  (Vanderburg Aff. ¶ 15; P. Harris Dep. 112-18; W. Harris Dep. 62-64).

Response to Fact 14:  Undisputed that the Harrises did not attempt to make direct contact with Vanderburg, however, they made direct

-6-

contact with Bishop, Vanderburg's agent, and also asked to meet with

Vanderburg  (Deposition of Phyllis Harris attached as Exh. 8 to

Plaintiffs' Appendix ["Harris Depo."] 116:8-117:17.)  Vanderburg

was also made aware that the Harrises had made complaints to Remco

and the police.  (Bishop Depo. 161:24-163:14; 215:10-216:5;

Deposition of Mary Jane Vanderburg attached as Exh. 1 to Plaintiffs'

Appendix ["Vanderburg Depo."] 89:4-14; 90:18-21.)

Defendants' Fact 15:  During Phyllis and William Harris' tenancy at 559B,

Ms. Vanderburg received numerous complaints of disturbances from Douglas

Matthew Gurkins.  (Vanderburg Aff. ¶ 11; Vanderburg Dep. 89).

Response to Fact 15:  Undisputed that Vanderburg claims she

received numerous complaints of disturbances from Gurkins.  Disputed that

Vanderburg actually received those complaints or that had any merit.  See

Plaintiffs' Additional Material Facts  98-121, 145-157.

Defendants' Fact 16:   Among other complaints, Douglas Matthew Gurkins

complained that Phyllis and William Harris had caused disturbances, including

incidents related to disputes over delivery workers pulling into the wrong

driveway at the duplex property and Douglas Matthew Gurkins' pulling a hose or

an electrical cord across the backyard of the duplex property. (Vanderburg Aff. ¶ 12; Vanderburg Dep. 89; Bishop Dep. 213, 215, 346).

Response to Fact 16: Undisputed that Vanderburg claims she received numerous complaints of disturbances from Gurkins. However, the complaint regarding the delivery incident post-dates defendants' attempt to evict the Harrises. (Depo. Exh. 99 [police report re incident on 10/17/2017].) The hose incident occurred on September 24, 2017, and resulted in Vanderburg's direction to Remco to file the summary ejectment complaint. (See Depo. Exh. 22, 64; Bishop Depo. 215:10-216:5.) But the Harrises had been told by Bishop that Vanderburg had instructed them to call the police if they had problems with Gurkins. (P.Harris Depo. 50:6-51:23.)

Defendants' Fact 17: In 2017, Ms. Vanderburg's point of contact with Remco was Mary Grace Bishop (hereinafter "Defendant Bishop"). (Vanderburg Aff. ¶ 10; Bishop Dep. 34).

Response to Fact 17: Undisputed that Grace Bishop was Vanderburg's point of contact with Remco, but she also communicated with Remco through David Bradley. (Deposition of

David Bradley attached as Exh. 5 to Plaintiffs' Appendix ["Bradley Depo."] 24-27.)

Defendants' Fact 18: During Plaintiffs' tenancy at Unit 559B, Defendant Bishop received multiple complaints related to ongoing disputes at the duplex property. (Bishop Dep. 156, 162).

Response to Fact 18: Objection, vague. Undisputed that the Harrises complained to Bishop multiple times regarding Gurkins' harassment. (Bishop Depo. 27:9-19.) Whenever the Harrises called Bishop with a complaint regarding Gurkins, she told them to call the Pitt County Sheriff, and they assured her that they were doing so. (Bishop Depo. 174:3-175:8; 185:9-186:2.) According to Bishop, she did not need to investigate to get to the truth of the situation between the Harrises and Gurkins because she "believed every word" the Harrises had said to her. (Bishop Depo. 270:21-271:4.)

Defendants' Fact 19: Defendant Bishop recounts instances of yelling on both sides and a lack of a peaceful environment by the tenants living at the duplex property. (Bishop Dep. 209-18).

Response to Fact 19:  Objection, hearsay, Fed. R. Evid. 801-802.

Bishop has no personal knowledge of any of the circumstances at the

duplex because she never interviewed or investigated the situation.

(Bishop Depo. 270:10-271:4.) Bishop's sole source of knowledge

alleged yelling by the Harrises were statements from Vanderburg

which may not be considered for their truth.  Moreover, Bishop

thought that what Gurkins did was "wrong" and may have told

Vanderburg as much.  (Bishop Depo. 174:3-6.)  Bishop believed

"every word" that the Harrises told her. (Bishop Depo. 271:1-4).

Bishop thought that the Harrises were "not unreasonable" to

complain, and that they should have done nothing differently, and

that they had complied with all their obligations as tenants.  (Bishop

Dep. 264:9-21, 315:8-15, 353:8-24.)

Defendants' Fact 20:  On September 26, 2017, Defendant Bishop signed

and filed a Complaint for Summary Ejectment against Plaintiffs due to failure to

maintain a peaceful environment .  (Bishop Dep. 209, Ex. 30).

Response to Fact 20:   Undisputed that Deposition Exhibit 30, the

Complaint for Summary Ejectment dated September 26, 2017, states

-10-

at paragraph 3, that "[t]he defendant breached the condition of the lease described below for which re-entry is specified . . . . Tenant's failure to maintain a peaceful environment so as not to disturb other tenants' peaceful enjoyment of the Premises. (Per their Residential Rental Contract Section 5 item (j).)" Disputed that plaintiffs, in fact, failed to maintain a peaceful environment. Bishop thought that what Gurkins did was "wrong" and may have told Vanderburg as much. (Bishop Depo. 174:3-6.) Bishop believed "every word" that the Harrises told her. (Bishop Depo. 271:1-4). Bishop thought that the Harrises were "not unreasonable" to complain, and that they should have done nothing differently, and that they had complied with all their obligations as tenants. (Bishop Dep. 264:9-21, 315:8-15, 353:8-24.) See also Plaintiffs' Additional Material Facts in Oppositions to Defendants' Motions for Summary Judgment ("Plaintiffs' Additional Material Facts") 32-126 filed herewith.

Defendants' Fact 21: The Complaint for Summary Ejectment was subsequently dismissed. (Bishop Dep. Ex. 40).

Response to Fact 21:  Objection, incomplete, Fed. R. Evid. 106.

Undisputed that the Complaint for Summary Ejectment was

subsequently dismissed, but that was not due to any action on the part

of Bishop, Remco or Vanderburg.  Rather, the Pitt County district

court entered judgment in favor of the Harrises, finding that Remco

had failed to prove its case.  (Depo. Exh. 40.)  The court taxed costs

to Remco.  (Id.)

Defendants' Fact 22:  On October 18, 2017, Plaintiffs requested, through

Defendant Bishop, that Defendant Vanderburg release them from their lease

obligations, refund half of their rent, and refund their security deposit.  (Bishop

Dep. Ex. 43).

Response to Fact 22:  Undisputed that the October 18, 2017 letter "To

Whom it May Concern" from Mr. and Mrs. Harris (Depo. Exh. 43)

states "We will voluntarily vacate the premises if you agree to refund

us half of the rent that we have paid to date in the amount of

$1,924.00."  Disputed that the letter demands refund of the security

deposit.

Defendants' Fact 23:  Ms. Vanderburg ultimately decided she would be willing to release Plaintiffs of their lease obligations and refund half of their security deposit.  (Vanderburg Dep. 94; Bishop Dep. 165).

> Response to Fact 23:  Objection and disputed, the evidence cited does not support the fact stated.  Bishop testified that on August 21, 2017, Vanderburg advised her that she was "only willing to let them out of their lease and give them their security deposit back and 30 days to vacate."  (Bishop Depo. 166:1-18.)  Vanderburg testified that she could not remember what she had offered with respect to the August 21, 2017 communication.  (Vanderburg Depo. 65:12-19.)  With respect to the Harrises's Ocotber 18, 2017 letter, Vanderburg testified that she told Bishop to "release them from their lease and give them their deposit back."  (Vanderburg Depo. 94:13-20.)  With respect to the Harrises' November 1, 2017 letter, Bishop testified that shortly after receiving that letter that Vanderburg had called and told Bishop that she was "not paying them anything" – in other words, she had retracted all offers, which Bishop did not challenge.  (Bishop Depo. 277:3-278:22.)

Defendants' Fact 24:  Plaintiffs continued to request increased amounts of funds in excess of their initial demand from Ms. Vanderburg.  (Bishop Dep. Ex. 43, 46, 48).

> Response to Fact 24:  Objection, incomplete, Fed. R. Evid. 106. While the Harrises did increase their demands, that was in part because the demand was based on a return of one-half the rent they had paid – $1,650 in August – which continued to grow as each month passed.  (See Depo. Exh. 20 [8/21/17 entry]; Depo. Exh. 43.) As of October, that amount was $1,950.  (Depo. Exh. 43.)  On November 1, 2017, Remco and Bishop received a fax from Marc Haggard, a local attorney, which consisted of a demand letter, written on behalf of the Harrises. (Depo. Ex. 46.)  Haggard faxed and mailed a copy of the letter to Remco and Bishop on November 1, 2017, (Haggard Declaration ¶¶ 1-5); Remco stamped it received on stamped as received on November 3, 2017. (Depo. Ex. 48.)  In this letter, Haggard not only informed them of the racial harassment and racial slurs Gurkins has subjected the Harrises to, but he explains how trying to evict the Harrises and not renewing their lease, all of it violated federal and state fair housing laws. Haggard demanded by

-14-

way of the letter that they return all of the rent the Harries paid to

them. Haggard concluded the letter by requesting that Remco and

Bishop contact him with a response. (Depo Exs. 46, 48.) Haggard did

not receive any response to his letter from Bishop, Remco, or

Vanderburg (who was also mentioned in the demand letter) (Haggard

Declaration ¶ 6).  See also Plaintiffs' Additional Material Facts 127-

140 filed herewith.

Defendants' Fact 25:  In response to Plaintiffs' ongoing requests Ms.

Vanderburg offered to allow Plaintiffs' out of their lease and refund their security

deposit in full; Defendant Bishop also notified Plaintiffs of the election not to

renew their lease for another term.  (Vanderburg Dep. 98-99, Ex. 44).

Response to Fact 25:  Undisputed that Remco's response to the

Harrises' October 23, 2017 letter, a letter from Bishop to the Harries

dated October 26, 2017 (Depo. Exh. 44), states that Vanderburg was

"NOT in agreement to refund the 1/2 of the rent you have paid," and

that Vanderburg had instructed Remco to "give you official notice

that when your lease expires on Febarury 28, 2018 it will not be

renewed and she expects you to move on, or before if you choose,

that date.  (Depo. Exh. 44.)  Disputed that any monetary offer remained open.  As of shortly after November 1, 2017, Vanderburg had retracted all offers.  (Bishop Depo. 277:3-278:22.)  See also Plaintiffs' Additional Material Facts 127-140 filed herewith.

Defendants' Fact 26:  Ms. Vanderburg subsequently offered to release Plaintiffs of their lease obligations, refund their security deposit, and refund half of their rent paid in the amount of $1,925.00 in compliance with Plaintiffs' first request. This offer was written and dated for sending via U.S. Mail on November 1, 2017.  (Vanderburg Dep. 102; Ex. 47).

Response to Fact 26:  Objection, incomplete, Fed. R. Evid. 106. Undisputed that Exhibit 47 so states, however disputed that the offer remained open.  Bishop testified that shortly after she mailed the November 1 letter (Depo. Exh. 47), that Vanderburg had called and told Bishop that she was "not paying them anything" – in other words, she had retracted all offers, which Bishop did not challenge. (Bishop Depo. 277:3-278:22.)  Moreover, neither plaintiffs nor their attorney Marc Haggard ever received a copy of the November 1, 2017 letter Bishop claims she mailed which contained the offer Vanderburg

contends she made in Depo. Exh. 47. (P.Harris Depo. 118:18-119:13; Depo.. Exh. 63, pp. 8-9; Haggard Dec. ¶ 7.) Indeed, Bishop admits she did not even send a copy to Haggard despite his request. (Bishop Depo. 277:15-278:22.) See also Plaintiffs' Additional Material Facts 127-140 filed herewith.

Defendants' Fact 27: Following notice of intent to vacate, Plaintiffs vacated the 559B unit on January 27, 2018. (Bishop Dep. Ex. 52, 58).

Response to Fact 27: Undisputed.

Defendants' Fact 28: During the course of Plaintiffs' tenancy, Plaintiffs never attempted to contact Ms. Vanderburg to report any of the alleged conduct on the part of Defendant Gurkins. (Vanderburg Aff.; P. Harris Dep. 112-18; W. Harris Dep. 62-64).

Response to Fact 28: Objection, incomplete, Fed. R. Evid. 106. Disputed. Although plaintiffs did not attempt to make personal contact with Vanderburg to report Gurkins' conduct, they put Vanderburg on notice of that conduct. Plaintiffs reported Gurkins' harassment and misconduct to Bishop and Remco – Vanderburg's managing agents – on multiple occasions. (Remco's Response to

-17-

Requests for Admission Nos. 1, 2, 3, 4, attached as Exh. 13 to

Plaintiffs' Appendix; Vanderburg Response to Request for Admission

No. 7, attached as Exh. 12 to Plaintiffs' Appendix.)  Mrs. Harris told

Grace Bishop in person at the Remco office that Gurkins was using

racial slurs towards them.  (P.Harris Depo. 51:24-52:19.)  That

meeting occurred when the Harrises had become fed up and tired of

the harassment and racial slurs and were ready to move and wanted

half their rent back.  (Id.)  Bishop's notes to the Harris file dated

August 21, 2017 state:

> "This tenant has called and come into my office several times
> over the last two months and complained about Matt, Mary
> Jane's neph[ew] causing disturbances in the unit beside them.
> The Harris's indicated to me that they wanted to move that
> would not put up with this anymore.  They called the sheriff's
> office several times and they came out.  I called the owner and
> on Friday 8/18/17 Mary Jane agreed to give them $1650.00
> back of the rent and [security deposit] they had paid so they
> would move.  On Monday, today, 8/21/17, Mary Jane called me
> back and said that she had changed her mind and she was only
> willing to let them out of their lease and give them their
> [security deposit] back and 30 days to vacate."

(Depo. Exh. 20.) The Harrises asked, through Bishop and Remco, to

meet with Vanderburg  (Harris Depo. 116:8-117:17.)  Bishop and

Remco were aware that the Harrises had made complaints regarding

Gurkins' misconduct to both them and to the police. (Bishop Depo. 161:24-163:14; 215:10-216:5.) Vanderburg was also made aware by Bishop that the Harrises had made complaints to Remco and to the police. (Id.) The Harrises' October 18, 2017 "To Whom it May Concern" letter described Gurkins' trespassing and threats. (Depo. Exh. 43.) Bishop contacted Vanderburg and alerted her to the receipt of the letter. (Bishop Depo. 251:2-11.) The Harrises' attorney Marc Haggard also wrote to Remco regarding the racial harassment in his letter dated November 1, 2017, which Bishop read in person to Vanderburg. (Bishop Depo. 268:16-24; 269:1-16; 272:13-24; 273:1-15; Haggard Dec. ¶¶ 1-8.) See also Plaintiffs' Additional Material Facts 127-140 filed herewith.

Defendants' Fact 29: Plaintiffs knew where Ms. Vanderburg lived; however they never visited or contact Ms. Vanderburg to report these alleged incidents. (P. Harris Dep. 112-18; W. Harris Dep. 62-64).

Response to Fact 29: Undisputed, but objection, incomplete, Fed. R. Evid. 106. See Response to Fact 28 above.

Defendants' Fact 30:  Phyllis Harris recalls seeing Ms. Vanderburg visit some of the other properties she owns on Huntingridge Road on occasion, and Plaintiffs never attempted to notify Ms. Vanderburg of Defendant Gurkins' conduct at that time.  (P. Harris Dep. 112-18; W. Harris Dep. 62-64).

> Response to Fact 30:  Undisputed, but objection, incomplete, Fed. R. Evid. 106.  See Response to Fact 28 above.

Defendants' Fact 31:  Plaintiffs never contacted or attempted to contact Ms. Vanderburg, and never notified her of any harassment, racial slurs, or any other conduct on the part of Defendant Gurkins.  (P. Harris Dep. 112-18; W. Harris Dep. 62-64).

> Response to Fact 31:  Undisputed that the Harrises did not personally contact Vanderburg, but objection, incomplete, Fed. R. Evid. 106. See Response to Fact 28 above.

Defendants' Fact 32:  Plaintiffs have no direct knowledge of any other reports of these instances to Ms. Vanderburg.  (P. Harris Dep. 115; W. Harris Dep. 64).

> Response to Fact 32:  Disputed.  See Response to Fact 28 above.  In addition, Vanderburg was present in court for the hearing on the

criminal complaint against Gurkin for threatening Mrs. Harris. (Declaration of Phyllis Harris attached as Exh. 22 to Plaintiffs' Appendix, ¶ 21.)

Defendants' Fact 33: Defendant Bishop was never informed of any racial slurs on the part of Defendant Gurkins by Plaintiffs. Defendant Bishop did not and could not have reported use of racial slurs to Ms. Vanderburg as she was not aware. (Bishop Dep. 267 ).

> Response to Fact 33: Disputed. See Response to Fact 28 above. See also Plaintiffs' Additional Material Facts 37-97 filed herewith.

Defendants' Fact 34: Plaintiffs never notified Ms. Vanderburg of the use of racial slurs on the part of Defendant Gurkins. (Vanderburg Aff. ¶ 17; P. Harris Dep. 112-18; W. Harris Dep. 62-64).

> Response to Fact 34: Disputed. See Responses to Facts 11 and 28 above. See also Plaintiffs' Additional Material Facts 37-97 filed herewith.

Defendants' Fact 35: Plaintiffs never notified Ms. Vanderburg of racially motivated conduct on the part of Defendant Gurkins. (VanderburgAff. ¶ 18; P. Harris Dep. 112-18; W. Harris Dep. 62-64).

Response to Fact 35: Disputed. See Responses to Facts 11 and 28 above. See also Plaintiffs' Additional Material Facts 37-140 filed herewith.

Defendants' Fact 36: Plaintiffs never notified Ms. Vanderburg of any racially discriminatory conduct on the part of Defendant Gurkins. (VanderburgAff. ¶ 19; P. Harris Dep. 112-18; W. Harris Dep. 62-64).

Response to Fact 36: Disputed. See Responses to Facts 11 and 28 above. See also Plaintiffs' Additional Material Facts 37-140 filed herewith.

Defendants' Fact 37: Plaintiffs never notified Ms. Vanderburg of any reports to law enforcement related to conduct on the part of Defendant Gurkins. (VanderburgAff. ¶ 20; P. Harris Dep. 112-18; W. Harris Dep. 62-64).

Response to Fact 37: Disputed. See Responses to Facts 11 and 28 above. See also Plaintiffs' Additional Material Facts 37-140 filed herewith.

Defendants' Fact 38: During Plaintiffs' tenancy at Unit 559B, Ms. Vanderburg was never notified by Defendant Bishop of reports of Defendant

-22-

Gurkins' use of racial slurs toward Plaintiffs. (VanderburgAff. ¶ 21; Bishop Dep. 267 ).

> Response to Fact 38: Disputed. See Responses to Facts 11 and 28
> above. See also Plaintiffs' Additional Material Facts 37-140 filed
> herewith.

Defendants' Fact 39: During Plaintiffs' tenancy at Unit 559B, Ms. Vanderburg was never provided any documents related to criminal filings by Plaintiffs against Defendant Gurkins. (Vanderburg Aff. ¶ 22).

> Response to Fact 39: Objection, incomplete. Fed. R. Evid. 106.
> Undisputed that plaintiffs did not provide any criminal complaints or
> law enforcement documents related to criminal filings to Remco, but
> Phyllis Harris also testified that Remco did not ask her "to provide
> any incident reports or criminal complaints or warrants or anything
> that related to Matthew Gurkins," (Harris Depo. 49:2-4), and that
> Remco "did not ask us to provide any paperwork," (Id. 50:14-18.)
> Disputed that Vanderburg was not on notice regarding the criminal
> filings. See also Plaintiffs' Additional Material Facts 37-140 filed
> herewith.

Defendants' Fact 40:  Ms. Vanderburg was informed of complaints of non-discriminatory disputes between both parties residing at the duplex property, which she responded by advising Plaintiffs to contact law enforcement to address any neighbor disputes.  (Vanderburg Dep. 89; Bishop Dep. 213, 215, 346; P. Harris Dep. 50; W. Harris 36).

> Response to Fact 40:  Undisputed that plaintiffs were informed by Bishop "that Ms. Vanderburg said if we have any problems with Matthew Gurkins, call the police."  (P.Harris Depo. 51:13-21.) Objection, vague as to who "informed" Ms. Vanderburg of complaints of non-discriminatory disputes between both parties residing at the duplex property.

Defendants' Fact 41:  Defendant Gurkins is not currently and has never been Ms. Vanderburg's employee.  (Vanderburg Aff. ¶ 23).

> Response to Fact 41:  Undisputed that Gurkins is not on Vanderburg's payroll, but she provides him housing and pays bills. See Plaintiffs' Additional Material Facts 166-172.  Disputed that Vanderburg did not have the ability to exercise control over Gurkins with respect to his tenancy or was not on notice regarding his

harassing, racist behavior.  Id.; see also Plaintiffs' Additional

Material Facts 183-196.  See also Response to Fact 42 below.

Defendants' Fact 42:  In all interactions cited in Plaintiffs' First Amended

Complaint, Defendant Gurkins was never acting on Ms. Vanderburg's behalf.

(Vanderburg Aff. ¶ 24).

Response to Fact 42:  Disputed.  In the course of Gurkins' racial

attack on Kathy Williams and her family, Gurkins specifically

demanded that Williams pay the rent she owed Vanderburg.

(Deposition of Kathy Williams attached as Exh. 11 to Plaintiffs'

Appendix ["Williams Depo."] 14:6-16:19; 17:2-22; 30:2-9.)  Remco's

files also indicate that Gurkins called in work orders to Remco and

reported the need for repairs for properties Remco managed on behalf

of Vanderburg.  (See Depo. Exh. 66, pp. 14 [WO#4464], 23-24

[WO#4837], 25 [WO#4893, 4951], 26 [WO#4981], 29 [WO#5234],

31 [WO#5347], 33 [WO#5632].)  Vanderburg was aware of her

authority to repudiate any apparent authority exercised by Gurkins

and did related to mantenance requests to Remco.  (Bradley Depo.

26:10-27; 31:6-23.) In 2017, Remco performed maintenance work on

-25-

unit 559-A, Huntingridge Road – the unit occupied by Gurkins and purportedly not under Remco's management. (See Depo. Exh. 96 at p. 3, 5.) When Gurkins confronted Kierra Roberson after she asked Gurkins family members not to throw metal scraps onto her yard from the adjacent Vanderburg-owned property, he told her she had "no right to come on our property." (Deposition of Kierra Roberson attached as Exh. 10 to Plaintiffs' Appendix ["Roberson Depo."] 11:24-17:2.) Gurkins told the Harrises that he was the nephew of the owner and "can drive all around the house if I want." Even after being charged with trespass, Gurkins continued to enter their yard. (Deposition of William Harris attached as Exh. 9 to Plaintiffs' Appendix ["W.Harris Depo."] 64:14-22; W.Harris Depo. 70:13-24 [Gurkins continued to enter their yard after being charged with trespass.]) Disputed that Vanderburg did not have the ability to exercise control over Gurkins with respect to his tenancy or was not on notice regarding his harassing, racist behavior. Id.; see also Plaintiffs' Additional Material Facts 166-172, 183-196 filed herewith.

-26-

Defendants' Fact 43:  In all interactions cited in Plaintiffs' First Amended Complaint, Defendant Gurkins was never acting as Ms. Vanderburg's agent. (Vanderburg Aff. ¶ 25).

> Response to Fact 43:  Disputed.  In the course of Gurkins' racial attack on Kathy Williams and her family, Gurkins specifically demanded that Williams pay the rent she owed Vanderburg. (Williams Depo. 14:6-16:19; 17:2-22; 30:2-9.)  Remco's files also indicate that Gurkins called in work orders to Remco and reported the need for repairs for properties Remco managed on behalf of Vanderberg.  (See Depo. Exh. 66, pp. 14 [WO#4464], 23-24 [WO#4837], 25 [WO#4893, 4951], 26 [WO#4981], 29 [WO#5234], 31 [WO#5347], 33 [WO#5632].)  When Gurkins confronted Kierra Roberson after she asked Gurkins family members not to throw metal scraps onto her yard from the adjacent Vanderburg-owned property, he told her she had "no right to come on our property."  (Roberson Depo. 11:24-17:2.)  Gurkins told the Harrises that he was the nephew of the owner and "can drive all around the house if I want."  Even after being charged with trespass, Gurkins continued to enter their yard.  (W.Harris Depo. 64:14-22; W.Harris Depo. 70:13-24 [Gurkins

-27-

continued to enter their yard after being charged with trespass].)
Disputed that Vanderburg did not have the ability to exercise control
over Gurkins with respect to his tenancy or was not on notice
regarding his harassing, racist behavior. Plaintiffs' Additional
Material Facts 166-172, 183-196 filed herewith.

Defendants' Fact 44: Ms. Vanderburg has never engaged in the use of
racial slurs, harassment, intimidation, coercion or racially discriminatory behavior
toward Plaintiffs. (Vanderburg Aff. ¶ 26; P. Harris Dep. 112-18).

Response to Fact 44: Undisputed that Ms. Vanderburg never
personally used racial slurs towards the Harrisses or personally
engaged in harassment or intimidation towards them. Disputed that
she did not engage in discriminatory behavior or is not responsible for
acts of harassment, intimidate, or discrimination. See also Plaintiffs'
Additional Material Facts 25-203 filed herewith.

Defendants' Fact 45: In 2014, an individual named Kathy Williams
(hereinafter "Ms. Williams") rented a duplex unit located on Huntingridge Road
owned by Ms. Vanderburg. (Williams Dep. 10).

Response to Fact 45: Undisputed. Ms. Williams rented the dwelling located at 509-A Huntingridge Road. (Williams Depo. 29:6-11.)

Defendants' Fact 46: On one occasion during Ms. Williams' tenancy, Defendant Gurkins approached Ms. Williams at her residence. (Williams Dep. 14-19).

Response to Fact 46: Undisputed that an incident occurred, but see Depo. Exhs. 151 and 152 and Plaintiffs Additional Material Facts 191-196 filed herewith.

Defendants' Fact 47: Defendant Gurkins yelled racial slurs and threats toward Ms. Williams and her children, which led to the filing of criminal charges against Defendant Gurkins. (Williams Dep. 14-19).

Response to Fact 47: Undisputed that the incident occurred, but see Depo. Exhs. 151 and 152 and Plaintiffs Additional Material Facts 191-196 filed herewith.

Defendants' Fact 48: Following this incident Ms. Vanderburg immediately intervened and contacted Ms. Williams to apologize for Defendant Gurkins' behavior and advise that he had not been taking his prescribed medication. (Williams Dep. 21-22).

-29-

Response to Fact 48:  Objection, incomplete, Fed. R. Evid. 106.

Undisputed that Vanderburg immediately contacted Ms. Williams and

asked her to forgive Gurkins because he was off his medication and

asked her not to file charges.  (Williams Depo. 21:22-22:17.)  But

Williams told Vanderburg she had already filed charges.  (Id.)

Shortly thereafter, Vanderburg came to Williams' house and turned

off the power.  (Williams Depo. 22:19-23:23, 24:10-27:13-18.)

Williams ran an extension cord to the vacant, neighboring unit (also

owned by Vanderburg) to get heat to keep her children warm.  (Id.)

On January 1, Vanderburg knocked on the door with a uniformed

officer and served Williams with eviction papers.  (Id.)  Williams and

her family moved within a few days.  (Williams Depo. 25:5-18.)

Defendants' Fact 49:  In 2016, while Remco was managing the rental

properties on Huntingridge Road, unit 509B was rented to an individual named

Kierra Roberson.  (Roberson Dep. 7).

Response to Fact 49:  Undisputed.

Defendants' Fact 50:  According to Ms. Roberson, on one occasion during

her tenancy, a dispute arose with Defendant Gurkins where Defendant Gurkins

yelled racial slurs, threats, and profanity toward her and her then boyfriend. (Roberson Dep. 14-24).

> Response to Fact 50: Undisputed that an incident occurred, but see Depo. Exhs. 161 and 162 and Plaintiffs' Additional Material Facts 183-190 filed herewith for a detailed account.

Defendants' Fact 51: Ms. Roberson never contacted Ms. Vanderburg to notify her of this incident. (Roberson Dep. 91, 93).

> Response to Fact 51: Undisputed that Ms. Roberson did not make personal contact with Vanderburg. Disputed, however, that she did not notify Vanderburg of the incident. Ms. Roberson and her mother Kimberly Roberson reported the details of the incident, include the use of racial slurs and violence, the Grace Bishop, the agent of Remco and Vanderburg. (Roberson Depo. 34:24-35:16; 41:4-15; 42:9-43:2; Declaration of Kimberly Roberson attached as Exh. 24 to Plaintiffs' Appendix.)

Defendants' Fact 52: Ms. Roberson still lives in the unit today and has not had any additional incidents. (Roberson Dep. 14, 46, 49, 78).

Response to Fact 52:  Objection, incomplete, Fed. R. Evid. 106.

Undisputed that Roberson still resides in the unit and has reported no

further incidents with Gurkins.  However, the day after the incident,

Roberson called Bishop from the hospital, reported the incident, and

asked whether could get her deposit back, since she did not feel safe

in the home anymore.  (Roberson Depo. 75:10-77:1; 96:6-97:13.)

Bishop responded that she would have to talk with Vanderburg about

ending the tenancy and setting up an inspection per protocol.

(Roberson Depo. 35:20-36:5, 37:4-11.)  If the inspection went well

and they found no damage, Roberson would get her security deposit

back and nothing would go on her credit report.  (Roberson Depo.

43:3-19.)  Although the property passed the moveout inspection,

Roberson ended up staying – she had just moved in and having just

given birth to a new baby she was simply too tired.  (Roberson Depo.

46:23-45:16.)  Vanderburg subsequently sold the property and Remco

ceased managing it.  (Robertson Depo. 78:6-22.)

*  *  *

Dated:  April 28, 2021.

Respectfully submitted,

-32-

BRANCART & BRANCART

*/s/ Christopher Brancart*
Christopher Brancart
Brancart & Brancart
P.O. Box 686
Pescadero, CA 94060
Tel:  (650) 879-0141
Fax:  (650) 879-1103
cbrancart@brancart.com
CA Bar 128475
[By Special Appearance]

LEGAL AID OF NORTH
CAROLINA
   Luis Juan Pinto
Legal Aid of North Carolina
P.O. Box 7283
Greenville, NC 27835
Tel: (252) 347-0135
luisp@legalaidnc.org
NC Bar 53823

LEGAL AID OF NORTH CAROLINA
   Kelly Anne Clarke
Legal Aid of North Carolina
2101 Angier Avenue, Suite 300
Durham, NC  27703
Tel:  (919) 865-3825
Fax: (919) 861-1887
kellyc@legalaidnc.org
NC Bar 28188

LEGAL AID OF NORTH CAROLINA
   Ayanda Dowtin Meachem
Legal Aid of North Carolina
P.O. Box 564
Ahoskie, NC 27910
Tel:  (252) 332-5124
Fax: (252) 332-3317
ayandam@legalaidnc.org
NC Bar 37714

Attorneys for Plaintiffs

-33-

# CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, on April 28, 2021, I served by email a copy of the attached document – **PLAINTIFFS' RESPONSE TO DEFENDANT MARY JANE VANDERBURG'S LR RULE 56.1 STATEMENT OF MATERIAL FACTS [Doc. 96]**– upon the following attorneys:

| | |
|---|---|
| Kelly Anne Clarke | Jay C. Salsman |
| Legal Aid of North Carolina | A. Ruthie Sheets |
| 2101 Angier Avenue, Suite 300 | Harris Creech Ward & Blackerby |
| Durham, NC  27703 | 325 Pollock Street |
| Fax: (919) 861-1887 | P.O. Drawer 1168 |
| kellyc@legalaidnc.org | New Bern, NC 28560 |
| | ars@harriscreech.com |
| | jcs@harriscreech.com |
| | [For Vanderburg] |
| | |
| Ayanda Dowtin Meachem | Spencer Beard |
| Legal Aid of North Carolina | Luke Dalton |
| P.O. Box 564 | McAngus Goudelock & Courie |
| Ahoskie, NC 27910 | Post Office Box 12327 |
| Fax: (252) 332-3317 | Wilmington, NC 28405 |
| ayandam@legalaidnc.org | spencer.beard@mgclaw.com |
| | luke.dalton@mgclaw.com |
| | [For Remco East and Bishop] |
| | |
| Luis Juan Pinto | Joseph Dupree |
| Legal Aid of North Carolina | 123 West Third Street |
| P.O. Box 7283 | P.O. Box 1219 |
| Greenville, NC 27835 | Fax: (252) 329-0444 |
| Fax: (252) 758-1843 | jaybdupree@gmail.com |
| luisp@legalaidnc.org | [For Gurkins] |

*/s/ Christopher Brancart*

-34-