IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO.: 4: 19-CV-00111

| | |
|---|---|
| **WILLIAM HARRIS** *and* **PHYLLIS HARRIS**, <br><br> *Plaintiffs,* <br><br> v. <br><br> **MICHAEL V. GURKINS, IN HIS CAPACITY AS EXECUTOR OF THE ESTATE OF MARY JANE VANDERBURG, DOUGLAS MATTHEW GURKINS, REMCO EAST, INC.,** *and* **MARY GRACE BISHOP**, <br><br> *Defendants.* | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL FINANCIAL CONDITION DISCOVERY FROM DEFENDANTS REMCO EAST, INC. AND MARY GRACE BISHOP** |

# INTRODUCTION

This motion to compel centers on the disclosure of financial condition or net worth information from the likely remaining defendants in this case, Remco East, Inc. ("Remco") and Mary Grace Bishop ("Bishop").[1]

# FACTS

Plaintiffs William and Phyllis Harris ("the Harrises") – an elderly Black couple – allege that these defendants are directly and vicariously liable for committing discriminatory housing practices in violation of the federal Fair

---

[1] Plaintiffs already settled with Executor Michael V. Gurkins; they're currently finalizing settlement with Douglas Matthew Gurkins.

Housing Act ("FHA") and related supplemental state claims. The Harrises rented a dwelling in Greenville, North Carolina, owned by defendant Mary Jane Vanderburg ("Vanderburg") and managed by Remco, a local real estate firm, and its broker-in-charge, Bishop. The Harrises allege in their detailed, first amended complaint (D.E. 33 [FAC]) that their neighbor, defendant Douglas Matthew Gurkins ("Gurkins"), Vanderburg's nephew, terrorized them with racial slurs, threats, and harassment, driving them from their home. (FAC ¶¶ 27-28, 35-38, 42, 45, 50, 52-57). The Harrises reported Gurkins's harassment to the sheriff, Remco, and Bishop. (FAC ¶¶ 29-37, 39-40, 43). The local sheriff responded, charging Gurkins with several criminal offenses, *see* (FAC ¶¶ 40, 42), some of which he was later convicted of in state court. (FAC ¶¶ 61-62).

But Remco's and Bishop's reactions was quite different: their solution was to sue the Harrises for eviction and to continue to manage rental dwellings owned by Vanderburg (who continued to rent to, allowed to stay, or had a tenancy at will with Gurkins), *see* (FAC ¶¶ 19, 44). Remco and Bishop specified in the court filed eviction complaint that it was the Harrises who breached the lease by interfering with the peaceful enjoyment of "other tenants" (Gurkins), *see* (DE 108-1, Depo. Exs. 30, 31) and Remco and Bishop filed this complaint without following their usual protocol, *see* (DE 107-2, Mary Grace Bishop Deposition, "Bishop Depo."

113:7-19) (D.E. 107-7) (DE 107-7, Sherry Franks Deposition, "Franks Depo." 14:10-21), or the lease agreement. (Id.)(D.E. 108-1, Depo. Ex. 13).

This eviction was the only one Remco and Bishop ever lost. (D.E. 107-2, Bishop Depo. 125:18-126:7, 128:1-22; 130:17-24); (D.E. 107-7, Franks Depo. 86:9-11). The loss of the eviction did not deter Remco and Bishop; upon authorization from Vanderburg, they then sent the Harrises a notice of lease of non-renewal. (D.E. 108-1, Depo. Ex. 44); (D.E. 107-1, Mary Jane Vanderburg Deposition, "Vanderburg Depo.," 98:12-99:17). And Remco and Bishop did not retract this notice even after receiving a letter from the Harrises' attorney at the time, calling out how their behavior violated the various fair housing laws. (DE 107-23, Declaration of Marc Haggard, ¶¶ 3-6); (D.E. 107-8, Phyllis Harris Deposition, "P. Harris Depo.," 118:18-119-13); and( D.E. 108-1, Dep. Exs. 46, 48, and 63, pp.8-9).

Remco and Bishop knew, or should have known better. To manage rental dwellings for owners, Remco is licensed by the North Carolina Real Estate Commission (NCREC), which mandates that its activities must be supervised by a broker-in-charge, here Bishop, who has been a licensed North Carolina real estate professional since 1993. (D.E. 107-2, Bishop Depo. 58:16-59:1; 66:16-21); (D.E. 107-15, Remco Response to RFA 31 [Set 19-68]). N.C. Gen. Stat. § 93A-1. As

licensees, Remco and Bishop are subject to NCREC regulations, N.C. Gen. Stat. §§ 93A-3 - 93A-26, including the obligation to comply with fair housing law, 21 NCAC §§ 58A.0104(b), 58A.1601, a requirement widely disseminated by NCREC to licensees. (FAC ¶17); (D.E. 107-26, Declaration of Janet B. Thoren, at ¶¶ 1-8, Ex. 1).

Further, their behavior towards the Harrises is even more egregious as Remco and Bishop had learned around the same time Harrises began their tenancy in February 2017 that another Remco tenant, Kierra Roberson, who is Black, was the racially harassed by Gurkins while living at a residence on Huntingridge Road that was owned by Vanderburg. (FAC ¶64); (D.E. 107-10, Kierra Roberson Deposition, "Roberson Depo.," 7:5-23; 8:19-23; 11:1-2; 34:24-35;16; 42:9-43:2; 70:19-23; 75:10-77, 96:6-97:13); (D.E. 107-24, Declaration of Kimberly Roberson, ¶¶ 4-8).

As Mrs. Harris testified, she and Mr. Harris "would have never moved to this duplex if we had known about the history of violence and racist behavior of Gurkins." (D.E. 107-22, Declaration of Phyllis Harris, ¶ 20.).

On July 15, 2020, based on acts occurring in 2014 and involving another prior tenant of Vanderburg, who is also Black, Gurkins was charged with criminal interference of a housing right based on race pursuant to the federal FHA, 42

U.S.C. § 3631. Gurkins pled guilty to this charge. Based on this conviction, Gurkins was to be imprisoned for a total of 28 months, receiving credit for time served while in federal custody. *See United States v. Gurkins*, No. 2:20-CR-31BO (E.D.N.C. 2020); (D.E. 109-5, Ex. 32); (D.E. 109-6), Ex. 33).

On March 15, 2021, Remco and Bishop moved for summary judgment on all of plaintiffs' claims alleged in their complaint. (D.E. 98). On February 10, 2022, this Court issued an order, *inter alia*, denying their motion as to plaintiffs' retaliation or interference claim under the FHA, 42 U.S.C. 3617, and some of their state law claims. (D.E. 130).

In August 2020, counsel for the now deceased Mary Jane Vanderburg moved for a motion for protective order prohibiting the disclosure of Vanderburg's net worth financial information, specifically tax records of 2018 and 2019 and a net worth statement, or financial condition statement, such as a loan application dated since January 1, 2018. (D.E. 67-1). Despite Vanderburg's objections, on January 11, 2021, prior to any dispositive motions being filed or decided, this Court allowed for this disclosure. (D.E. 72, pp.10-16).

## DISCOVERY AT ISSUE IN THIS MOTION

Plaintiffs issued interrogatories to Remco and Bishop, interrogatory 19 to Remco and interrogatory 18 to Bishop, in December 2019. By way of these

interrogatories, plaintiffs asked them to state their respective net worth as of December 31, 2019, listing each asset and each liability valued at $2,500 or more. In January 2020, Remco and Bishop objected to these interrogatories, each giving the identical response - that the interrogatory was "premature, unduly burdensome and seeks information not relevant to plaintiffs' claims." (Pls.' Ex. 1, Remco's Responses to Plaintiffs' Second Interrogatories) (Pls.' Ex. 2, Bishop's Responses to Plaintiffs' Second Interrogatories).

In December 2020, plaintiffs sent Remco and Bishop each a request for production of documents, request 67 to Remco and request 20 to Bishop, asking them to produce "documents sufficient to determine" their respective "net worth and financial condition since January 1, 2018, including any financial statement, loan application or net worth statement relevant to that determination." In January 2021, they both objected to these requests, giving the identical response again, stating that the request was "premature, vague, and seeks information not relevant to the plaintiffs' claims." (Pls.' Ex. 3, Remco's Answers to Plaintiffs' Eighth Request for Production of Documents) (Pls.' Ex. 4, Bishop's Answers to Plaintiffs' Third Request for Production of Documents).

Prior to filing this motion, the parties tried in good faith to resolve the discovery dispute, as early as December 2020, *see* (Pls.' Exs. 5 and 6) and as recently as of August 30, 2022, *see* (Pls.' Ex. 7).

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Ferruccio v. Davis,* No. 5:19-CV-346-BO, 2020 U.S. Dist. LEXIS 212300, *1, 2-3 (E.D.N.C. Nov. 13, 2020). A party may move for an order compelling discovery as along as that party certifies that there has been a good faith effort to resolve the dispute prior to filing any such motion. Fed. R. Civ. P. 37(a)(1). The party resisting discovery bears the burden of demonstrating that the requested information is not discoverable. *Ferruccio*, 2020 U.S. Dist. LEXIS at *3. "To meet this burden, the non-moving party 'must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law.'" *Johnson v. North Carolina Dept. of Justice*, No. 5:16-CV-679-FL, 2018 U.S. Dist. LEXIS 190494 at *7 (*quoting Mainstreet Collection, Inc. v. Kirkland's Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010).

# ARGUMENT

**Plaintiffs Have Made A Prima Facie Showing For Punitive Damages Under The FHA And Therefore Have Demonstrated The Relevance, Need And Proportionality Of The Discovery**

  1. *The information sought by plaintiffs is relevant.*

Here, plaintiffs seek punitive damages pursuant to the FHA only (D.E. 33, ¶ 73, p. 22). Punitive damages are expressly authorized by the FHA. 42 U.S.C. §§3613(c) and 3612(o)(3) and (2). The award of punitive damages under the FHA is governed by federal law. *See United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 932 (8th Cir. 1999). A defendant's size and financial condition must be considered in determining the size of a punitive damages award in a fair housing case. *See e.g. Phillips v. Hunter Trails Community Ass'n,* 685 F.2d 184, 191 (7th Cir. 1982).

This Court has previously reached the same conclusion when it came to Vanderburg's net worth discovery: "[i]nformation regarding Defendant Vanderburg's financial position is relevant to Plaintiffs' claim for punitive damages under the FHA." *Harris v. Vanderburg*, No. 4:19-cv-00111, 2021 U.S. Dist. LEXIS 4614, at *13 (E.D.N.C. Jan. 11, 2021). There is no reason why this same reasoning would not apply to Remco and Bishop here.

## 2. The discovery sought by plaintiffs is not premature.

Many federal courts in FHA cases have allowed discovery of net worth information without requiring the plaintiff to establish a *prima facie* case on the issue of punitive damages or survive dispositive motions on such claims. *United States v. Autumn Ridge Condo.,* 265 F.R.D. at 328-29 (N.D. Ill. 2009); *Torres v. Rothstein*, No. 2:19-cv-00594, 2020 U.S. Dist. LEXIS 118935, *1-2, 11-15 (D. Nev. July 6, 2020); *Na'im v. Sophie's Arms Fine Residences*, LLC, No. 13c-cv-2515-JAH (BLM), 2014 U.S. Dist. LEXIS 100700, *1, 6, 10-15 (S.D. Cal. July 2, 2014) *Salisbury v. Hickman*, No. 1:12-cv-01098-LJO-JLT, 2013 U.S. Dist. LEXIS 115024, *1, 10-13 (E.D. Cal. Aug. 14, 2013).

Regarding this same issue as to punitive damages under the FHA, this Court has determined that:

> Whatever is meant by 'prima facie showing,' 'credible showing' or "or 'viable punitive damages,' it cannot simply mean 'withstands a motion for summary judgment.' The court agrees…that a party's financial information, including tax records may be discoverable prior to a summary judgment ruling if the pleadings contain more than a bald demand for punitive damages and there has been some factual showing to support the punitive damages claim.

*Harris v. Vanderburg*, 2021 U.S. Dist. LEXIS 4614, at *19-20.

At the time plaintiffs' issued the net worth discovery to Remco and Bishop, first in December 2019 and then again in December 2020, they had already sufficiently pled detailed allegations, as described in the above Fact section of this brief, how Remco and Bishop were liable for punitive damages for their respective FHA violations, i.e., that they had each acted with reckless disregard of plaintiffs' federally protected rights.

Namely, the FAC goes into detail how Remco and Bishop, as those licensed by North Carolinas as real estate entities and professionals, were required to uphold fair housing laws. Despite this, they ignored the racial harassment inflicted on the Harrises by Gurkins and then they retaliated against the Harrises by trying to evict them and then when that did not work, issued the Harrises a lease non-renewal letter. These actions are also particularly egregious as Remco and Bishop had prior knowledge of Gurkins's racial harassment of another Black tenant who rented from Vanderburg and Remco, and, during the pendency of this case, Gurkins was convicted of the federal crime of interference with a fair housing right based on race. The FAC therefore did not merely include a "bald demand for punitive damages," *see Moore v. Dan Holdings, Inc.*, No. 1:12 CV 503, 2013 U.S. Dist. LEXIS 6138, *42 (M.D.N.C. April 30, 2013).

At the time of the issuance of the disputed discovery, particularly those in December 2020, plaintiffs had developed even more the factual record, as cited to in the above Fact section, that would further support their claims for punitive damages under the FHA.

Last, a *prima facie* showing as to punitive damages "can be satisfied by presenting evidence in support of the punitive damages claim or by surviving a motion to dismiss or motion for summary judgment." *SMD Software Inc. v. Emove, Inc.*, No. 5:08-cv-403-FL, 2010 U.S. Dist. LEXIS 54736 at *2 (E.D.N.C. June 2, 2010). On February 10, 2022, this Court determined that plaintiffs' retaliation or interference claims under the FHA survived Remco's and Bishop's motion for summary judgment. (D.E. 130). These retaliation or interference claims allow, *inter alia,* for the recovery of punitive damages.

For these reasons, plaintiffs' net worth discovery to Remco and Bishop was not, and continues not to be, premature.

 3. *This discovery is narrowly tailored and is not burdensome.*

The discovery plaintiffs seek consists of particular described information and documents designed to contain financial information related to Remco's and Bishop's respective net worth. The temporal scope of the discovery is quite narrow, only seeking specified information as to net worth as of December 31,

2019 for the interrogatories (listing each asset and liability valued at $2500 or more) and specific documents (including any financial statement, loan application, or net worth statement) as to net worth since January 1, 2018 for the requests for production.

The temporal limits specified in this discovery, at the original date of issuance, is consistent with the line of cases that have concluded that the production of financial records over approximately the past two years is generally sufficient to establish a defendant's current net worth in FHA cases for punitive damages. *See Autumn Ridge*, 265 F.R.D. at 328 (allowed disclosure of from January 1, 2007); *Torres,* 2020 U.S. Dist. LEXIS 118935 at *1-2, 11-15 (disclosure allowed from January 1, 2018 to February 2020); *Na'im,* 2014 U.S. Dist. LEXIS 100700, at *1, 6, 10-15 (allowed disclosure from January 2013 to present); *Southern Cal. Hous. Rights Ctr.*, 2006 U.S. Dist. LEXIS 65330, at *2 (allowed discovery as to assets, profits and loss statements, and tax returns from January 1, 2004), *but see Salisbury v. Hickman*, No. 1:12-cv-01098-LJO-JLT, 2013 U.S. Dist. LEXIS 115024, *1, 10-13 (E.D. Cal. Aug. 14, 2013)(allowed disclosure going back six years), *see also Harris v. Vanderburg*, 2021 U.S. Dist. LEXIS 4614, at *5, 13 (allowing disclosure since January 1, 2018) and *Cf. Simmons v. Corizon Health, Inc.*, No. 1:14-cv-730, 2016 U.S. Dist. LEXIS 205389,

at *9, 10 (M.D.N.C. Dec. 7, 2016) (determined that if the plaintiffs' punitive damages claims in non-FHA case survived summary judgment, they could obtain current net worth discovery since January 1, 2013 to present).

Last, the burden to produce this information that most likely is kept in the ordinary course of business for both parties or for tax purposes, appears to be minimal. There is also a protective order already in place to address any concerns or burden related to sensitive or personal information. (D.E. 44).

### 4. *The requested discovery is not vague.*

"[N]et worth … is defined by Black's Law Dictionary as 'a measure of one's wealth, usually calculated as the excess of total assets over total liabilities.'" *Moore,* 2013 U.S. Dist. LEXIS 61368, * 47, 48. Nothing about plaintiffs' discovery is vague; the discovery requested is specific as to time period and also to the type of information plaintiffs' seek to determine Remco's and Bishop's respective net worth. Similar language was used for the prior Vanderburg net worth discovery and that discovery was not determined by this Court to be vague.

### 5. *This discovery is proportional to the needs of this case.*

Rule 26(b)(1)'s proportionality factors tip in favor of compelling this discovery. First, this discovery enables plaintiffs to identify the possible size of punitive damages that can be obtained in this case. Second, the issues here are

important and the facts alleged egregious, made all the more disturbing because of the direct involvement of licensed real estate professionals. *Meyer v. Holley*, 537 U.S. 280, 290 (2003) (FHA's objective is an "overriding societal priority.") Third, a protective order is already in place to address any concerns related to sensitive or personal information. (D.E. 44).

Last, the imbalance of information between the parties can only be fixed by plaintiffs' discovery. If plaintiffs cannot discover this information from Remco and Bishop, solely within their control, then plaintiffs will be precluded from access to evidence needed for trial.

## LR 7.2(f)(2)(C) Certificate

I certify that this memorandum does not exceed 2800 words, excluding the case caption, the signature block, any required certificates, and any exhibits.

* * *

Dated: September 1, 2022

Respectfully submitted,

| | |
|---|---|
| BRANCART & BRANCART | LEGAL AID OF NORTH CAROLINA |
| | */s/ Kelly Anne Clarke* |
| Christopher Brancart | Kelly Anne Clarke |
| Brancart & Brancart | Legal Aid of North Carolina |
| P.O. Box 686 | 2101 Angier Avenue, Suite 300 |
| Pescadero, CA 94060 | Durham, NC 27703 |
| Tel: (650) 879-0141 | Tel: (919) 865-3825 |
| Fax: (650) 879-1103 | Fax: (919) 861-1887 |
| cbrancart@brancart.com | kellyc@legalaidnc.org |
| CA Bar 128475 | NC Bar 28188 |
| [By Special Apperance] | |
| | LEGAL AID OF NORTH CAROLINA |
| LEGAL AID OF NORTH CAROLINA | Ayanda Dowtin Meachem |
| Luis Juan Pinto | Legal Aid of North Carolina |
| Legal Aid of North Carolina | Post Office Box 2684 |
| Post Office Box 564 | Wilson, NC 27893 |
| Ahoskie, North Carolina 27910 | Tel: (252) 291-6851 |
| Tel: (252) 332-5124 | Fax: (252) 291-6407 |
| Fax: (252) 332-3317 | ayandam@legalaidnc.org |
| luisp@legalaidnc.org | NC Bar 37714 |
| NC Bar 53823 | |

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, on September 1, 2021, I served by email via the ECF system a copy of the attached document – **MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL FINANCIAL INFORMATION FROM DEFENDANTS REMCO AND BISHOP** – upon the following attorneys:

Christopher Brancart
Brancart & Brancart
Post Office Box 686
Pescadero, CA 94060
Fax: (650) 879-1103
kellyc@legalaidnc.org

[For Plaintiffs]

Spencer Beard
McAngus Goudelock & Courie
Post Office Box 12327
Wilmington, NC 28405
Fax: (910) 920-9157
spencer.beard@mcglaw.com

[For Remco East and Bishop]

Ayanda Dowtin Meachem
Legal Aid of North Carolina
Post Office Box 2684
Wilson, NC 27893
Fax: (252) 291-6407
ayandam@legalaidnc.org

[For Plaintiffs]

Joseph B Dupree, II.
Law Office of Joseph B. Dupree
123 W 3rd Street
Greenville, NC
Fax: (252) 758-9777
jaybdupree@gmail.com

[For Douglas Matthew Gurkins]

Luis Juan Pinto
Legal Aid of North Carolina
Post Office Box 564
Ahoskie, NC 27910
Fax: (252) 332-3317
luisp@legalaidnc.org

*/s/ Kelly Anne Clarke*

16 | P a g e

Case 4:19-cv-00111-D   Document 172   Filed 09/01/22   Page 16 of 16